### ELIAS v. COLLINS.

1. PARENT AND CHILD—AT COMMON LAW MINOR MAY NOT SUE FATHER.

    At common law, a minor may not sue his father in tort.

2. SAME—MOTOR VEHICLES—COMMON-LAW RULE NOT CHANGED BY COMING OF AUTOMOBILE.

    The modification of the common-law rule that a minor may not sue his father in tort, so as to authorize a minor to bring action against his father for damages caused by the negligent driving of his automobile, on the theory of changed business methods since the coming of the automobile and insurance thereon and that the father would be reimbursed by the insurance company, is for the legislature rather than the courts, and, no such action having been authorized, the common-law rule is still in force.

3. RAILROADS — CROSSING ACCIDENT — SPEED OF TRAIN IN OPEN COUNTRY NOT NEGLIGENCE.

    Running an interurban car at a speed of 40 or 45 miles an hour over a highway crossing in the open country. was not actionable negligence, where the conditions were

---

[1]Parent and Child, 29 Cyc. p. 1663; 31 A. L. R. 1157; 42 A. L. R. 1363; 20 R. C. L. 631; 5 R. C. L. Supp. 1120; [2]Constitutional Law, 12 C. J. § 387; Parent and Child, 29 Cyc. p. 1663; [3]Railroads, 33 Cyc. p. 974.

such that, 150 feet back from the crossing, a view could be had extending 1,000 feet in the direction from which the car was coming.

4. SAME—CROSSING SIGNALS—NEGATIVE TESTIMONY INSUFFICIENT TO TAKE QUESTION TO JURY.

Testimony by the occupants of an automobile, struck by an interurban car at a highway crossing in the open country, that they did not hear any crossing signal given, in the absence of testimony that they were listening therefor, was merely negative, and was insufficient to take to the jury the question of negligence in failing to give such signal.

BIRD, C. J., and SNOW and McDONALD, JJ., dissenting in part.

Error to Kent; Dunham (Major L.), J.    Submitted April 13, 1926.    (Docket No. 69.)    Decided December 9, 1926.

Case by Richard Elias, an infant, by his next friend, against John F. Collins, receiver of the Michigan Railroad Company, and Joseph Elias for personal injuries. Judgment for defendants on a directed verdict. Plaintiff brings error.    Affirmed.

*Rodgers & Rodgers,* for appellant.

*Whiting & Kleinstiver,* for appellee receiver.

*Knappen, Uhl & Bryant,* for appellee Elias.

BIRD, C. J. (*dissenting in part*).    Joseph Elias is a resident of Grand Rapids.    On Sunday, July 12, 1925, he took his family out for a drive in his automobile. His older son, Arthur, drove the machine, and he sat in the seat with him.    On the rear seat were his two daughters and the plaintiff in this suit, a boy 14 years of age.    On their return trip they went north through the village of Martin.    Just about a block north of the village defendant's railway track crossed the north and south highway, M 13, in a northwesterly and southeasterly direction.    The automobile was

*Railroads, 33 Cyc. pp. 1113, 1118.

being driven at the rate of 20 miles an hour until it reached the vicinity of the railway track, when the speed was reduced to 15 miles an hour. When about 10 feet from the track they discovered an interurban car 40 feet away, coming at the rate of 40 or 45 miles an hour. Arthur Elias, the driver, made a desperate effort to stop the car before reaching the track. He failed, however, as the front wheels of the automobile stopped on the south or west rail. A collision followed, and plaintiff was thrown out and badly injured.

Plaintiff, by his next friend, brought this action against the railway and against his father to recover for his injuries. He charges both, the driver of the automobile and the motorman, with negligence. Arthur Elias was charged with driving upon the track without observing the interurban car, and the railway was charged with operating the car with excessive speed over said highway, M 13, and was also charged with approaching said crossing without giving due warning. The trial resulted in a directed verdict for both defendants.

1. Was the father liable? It is a rule of the common law that a minor cannot sue his father in tort. The rule had its beginning in the interest of the peace of the family and of society, and is supported by sound public policy.

Cyc. observes:

"Actions by children against their parents are not to be encouraged unless to redress clear and palpable injustice, and a. minor child has no right of action against a parent for the tort of the latter." 29 Cyc. p. 1663.

Ruling Case Law states the rule:

"It is well established that a minor child cannot sue his parent for a tort. The peace of society, and of
237—Mich.—12.

the families composing society, and a sound public policy, designed to subserve the repose of families and the best interest of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent.   An unkind and cruel parent may and should be punished at the time of the offense, if an offender at all, by forfeiting custody and suffering criminal penalties, if need be; but for the minor child who continues, it may be for long years, at home and unemancipated, to bring a suit, when arrived at majority, free from parental control and under counter influences, against his own parent, either for services accruing during infancy or to recover damages for some stale injury, real or imagined, referable to that period, appears quite contrary to good policy."   20 R. C. L. p. 631.

Cases which have applied the rule are *Small* v. *Morrison*, 185 N. C. 577 (118 S. E. 12, 31 A. L. R. 1135); *Hewlett* v. *George*, 68 Miss. 703 (9 South. 885, 13 L. R. A. 682); *McKelvey* v. *McKelvey*, 111 Tenn. 388 (77 S. W. 664, 64 L. R. A. 991, 1 Ann. Cas. 130, 102 Am. St. Rep. 787); *Taubert* v. *Taubert*, 103 Minn. 247 (114 N. W. 763); 1 Cooley on Torts (3d Ed.), 492.   See, also, note to 31 A. L. R. 1157, for further list of cases.

Plaintiff's counsel recognize this as a rule of the common law, but they argue that modern business methods have so changed with the coming of the automobile and the insurance thereon that the common-law rule should be modified to allow minors to recover against their father for torts, inasmuch as insurance companies promise to reimburse the insured for any judgment gotten against him for injuries caused by the automobile.   Perhaps there is a spice of good sense in this, but, if the rule is to fade away because the reason is gone for its existence, what will we say as to boys who are injured while working on farms or in industrial plants, by reason of the negligence of

their fathers? In these cases there is as much need of the common-law rule as there ever was. If this rule is to go out or be modified we think it should be done by the legislature rather than by us. By reason of this rule the trial court was right in directing a verdict as to Joseph Elias.

2. Was the company liable for excessive speed? The proof shows that this car was running 40 or 45 miles an hour when it crossed this highway, and before it could be stopped it ran between 250 and 300 feet. We have said that it was not negligence, as a matter of law, to run a train in the open country at that rate of speed. *Guggenheim* v. *Railway Co.*, 66 Mich. 150; *Thayer* v. *Railway Co.*, 93 Mich. 150; *Ommen* v. *Railway Co.*, 204 Mich. 392; *Hudson* v. *Railway Co.*, 227 Mich. 1. The rule to which we have adhered is well stated by Ruling Case Law:

"The general rule is that in the absence of a prohibitory statute or ordinance a railroad company may ordinarily run its trains at such speed as it sees fit, and that a charge of negligence cannot be predicated on the rate of speed at which a train is run, unless there are attendant circumstances which make such speed negligence. A rate of speed that would be entirely safe under some conditions may, however, be recklessly dangerous under other conditions, and it is generally held that it is for the jury to determine whether or not the speed at which a train was operated was negligent under all the circumstances. * * * Greater caution is required of a railroad company in running its trains in the country while passing places where it is known that persons are in the habit of crossing the track in necessarily going from one place to another than is required while running in unfrequented and scantily populated sections." 22 R. C. L. p. 947.

See, also, *Schexnaydre* v. *Railway Co.*, 46 La. Ann. 248 (14 South. 513); *Good Roads Construction Co.* v. *Railway Co.*, 173 Mich. 1.

But this car was within one block of the village of Martin, a village of nearly 500 people. The highway was an improved cement State highway. It was on a Sunday afternoon when there is much travel. We incline to the opinion that under these circumstances it was a question for the jury to say whether the interurban car should have approached this important crossing so near to the village at the rate of 40 or 45 miles an hour.

3. Did the interurban car give due warning of its approach? The testimony shows that there were no unusual noises as they passed from the village to the crossing. No one in the car was talking save a suggestion by the daughter to the driver that he was approaching a railway track. The driver in response to this looked both ways, but observed no car approaching. The occupants of the car were interested in making the crossing in safety. This shows that the occupants of the automobile were in a position and mood to hear a warning. They heard none, and there was no proof that one was given until the car was within 40 feet of the crossing. In view of this, we think there was some evidence that none was given. *Deneen* v. *Railway Co.*, 150 Mich. 235 (13 Ann. Cas. 134). We think that this question should have gone to the jury.

4. In view of plaintiff's age, the contributory negligence of the driver will not be imputed to him. *Ommen* v. *Railway Co.*, 204 Mich. 392. It will, therefore, require no discussion.

For the errors suggested, the judgment should be reversed and a new trial ordered. Plaintiff should recover costs from the defendant railway, and defendant Joseph Elias should recover costs from plaintiff.

SNOW and McDONALD, JJ., concurred with BIRD, C. J.

FELLOWS, J.   I agree with the Chief Justice that
the judgment for defendant Elias should be affirmed.
But I do not agree that actionable negligence against
the company was established.   The crossing was not
in the little village of Martin but outside in the open
country.   Plaintiff's brother Arthur, who was driv-
ing, testified:

"I had a view of that car approaching from the north
for about 1,000 feet.   I didn't take notice that when
I was back there 150 feet I could have a view of the
north of an approaching car for nearly half a mile.
From a point in the highway, approximately 150 feet
south of the first rail of the track you have a clear
view of the north along the interurban track for
quite a long distance, 1,000 feet, not more than that,
to my idea.   From that point 140 feet back from the
track there are no objects to obstruct my view of the
north, down the track."

The crossing was a crossing in the open country with
a view for 150 feet back from it extending 1,000 feet
in the direction from which the car came.   Under our
authorities negligence cannot be predicated on speed
at such crossing.   In *Robinson v. Railroad Co.,*
79 Mich. 323 (19 Am. St. Rep. 174), it was said:

"It is to be presumed that the defendant had com-
plied with the provision of the statute in regard to
fencing its road, and constructing this crossing with
due regard to the safety of persons and property pass-
ing over it, and providing its engine and cars with the
proper appliances.   Having done this, it was entitled
to the use of its road for the passage of trains at
all times, to increase the speed of its regular trains
when behind time, and to run special or wild trains
whenever its business required.   The law did not
limit the rate of speed of its trains.   The business of
the country demands of railroads rapid transit, both
for persons and property.   It has nowhere been held
that a speed of even 60 miles an hour is negligence,
when a train is running through the country outside
of villages and cities, or through a sparsely settled
community.   It is well known that trains are now

being run in many parts of the country at the rate of 50 to 60 miles an hour."

See, also, *Shufelt* v. *Railroad Co.*, 96 Mich. 327; *Mulvaney* v. *Railroad Co.*, 233 Mich. 350.

There were five occupants of the automobile. No one of them testified that he or she was listening for a car. Indeed, their testimony affirmatively shows that none of them were paying any attention or giving any heed to the railroad until the automobile was too close to the track to be stopped. Under these circumstances, I think their testimony that they did not hear any signals given was negative testimony under the rule laid down in *Lambert* v. *Railway Co.*, 209 Mich. 107, where many of the authorities are considered.

I perceive no reason for reversing the judgment for both defendants.

SHARPE, STEERE, WIEST, and CLARK, JJ., concurred with FELLOWS, J.