HUSH v DEVILBISS COMPANY

1. TORTS—PARENT AND CHILD—IMMUNITY—EXCEPTIONS.
   The doctrine of intra-family tort immunity has been abolished in Michigan, with two exceptions: (1) where the alleged negligent act involves an exercise of reasonable parental authority over a child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

2. PARENT AND CHILD—TORTS—IMMUNITY—NEGLIGENT SUPERVISION.
   A parent is immune from tort liability to his children for alleged negligent parental supervision of the children.

3. PARENT AND CHILD—IN LOCO PARENTIS—TORTS—IMMUNITY—PARENTAL FUNCTIONS.
   A person standing in loco parentis to a child is immune from tort liability to the same extent as a natural parent with regard to the exercise of parental functions.

4. JUDGMENT—SUMMARY JUDGMENT—FAILURE TO STATE CLAIM—PARENT AND CHILD—IN LOCO PARENTIS—NEGLIGENT SUPERVISION.
   A motion for summary judgment for failure to state a claim upon which relief may be granted, brought by a person standing in loco parentis who allegedly has been negligent in supervision of a child, is sufficient to place the question of that person's immunity from liability before the court (GCR 1963, 117.2[1]).

5. PARENT AND CHILD—LIVING PARENTS—IN LOCO PARENTIS.
   The fact that both of a child's parents are alive is not conclusive

REFERENCES FOR POINTS IN HEADNOTES

[1–7] 59 Am Jur 2d, Parent and Child §§ 151, 152.
   Liability of parent or person in loco parentis for personal tort against minor child. 19 ALR2d 423.
[3, 4] 59 Am Jur 2d, Parent and Child § 155.
[4] 61 Am Jur 2d, Pleading §§ 71 et seq., 225.
[5–7] 59 Am Jur 2d, Parent and Child § 88.
[7] 59 Am Jur 2d, Parent and Child § 92.

as to the lack of existence of *in loco parentis* status in a third party.

6. PARENT AND CHILD—IN LOCO PARENTIS—INFERENCES—INTENT.

    The assumption of *in loco parentis* status is a question of intent, which can be inferred from the acts and declarations of the parties, considering such factors as the age of the child, the degree to which the child is dependant on the person claiming to be standing *in loco parentis,* the amount of support provided, and the extent to which duties commonly associated with parenthood are exercised.

7. PARENT AND CHILD—GRANDPARENTS—IN LOCO PARENTIS.

    A trial court properly held as a matter of law that a grandmother was acting *in loco parentis* at the time her grandson was injured where she cared for the grandson on a full-time basis during his early formative years because of the disability of the child's mother, she had cared for him continuously for seven months prior to the injury, and she was the child's primary mother figure.

Appeal from Macomb, Robert J. Chrzanowski, J. Submitted June 21, 1977, at Detroit. (Docket No. 29986.) Decided August 23, 1977.

Complaint by Emerson Hush, as next friend of Richard Hush, a minor, against Devilbiss Company, Champion Spark Plug Company, and Arnold's, Inc., for damages for injuries suffered by Richard Hush in an accident involving a vaporizer. Third-party complaint by defendants against Irma M. Hush for contribution. Summary judgment on the third-party complaint in favor of Irma M. Hush. Defendants appeal. Affirmed.

*Kerr, Wattles & Russell* (by *Robert R. Nix II),* for defendants Devilbiss Company, Champion Spark Plug Company and Arnold's, Inc.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C.* (by *Edmund M. Brady, Jr.),* for third-party defendant Irma M. Hush.

Before: Beasley, P. J., and V. J. Brennan and J. R. McDonald,* JJ.

V. J. Brennan, J. Defendants, Devilbiss Company, Champion Spark Plug Company and Arnold's, Inc. (hereafter Devilbiss), appeal the order of Macomb County Circuit Court Judge Robert J. Chrzanowski entered on May 24, 1976, granting the motion for summary judgment filed by third-party defendant Irma M. Hush (hereafter Hush). An original complaint was instituted on March 13, 1975, by Emerson Hush, as next friend of Richard Hush, a minor, (hereafter plaintiff), against Devilbiss for injuries occurring on April 1, 1968, when plaintiff spilled the contents of a vaporizer containing hot water upon himself causing burns to various parts of his body. On February 10, 1976, the deposition of third-party defendant Hush was taken, which indicated her supervisory relationship at the time of the accident and which became a basis for a third-party complaint alleging negligence lodged against her by Devilbiss. Motion for summary judgment pursuant to GCR 1963, 117.2(3) was filed on April 8, 1976, by third-party defendant Hush. After hearing arguments on May 24, 1976, Judge Chrzanowski granted the motion on May 31, 1976, on grounds that Hush, as a grandmother, stood *in loco parentis* to plaintiff and possessed immunity from suit by plaintiff, thereby precluding third-party action for negligence by Devilbiss. Devilbiss appeals this decision by right under GCR 1963, 806.1.

The facts giving rise to this appeal may be simply stated. Third-party defendant Hush testified through her deposition that she and her husband lived at 21103 Nummer in Warren, Michi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

gan, and had two children of their own, Sandra and Emerson. Emerson was married and had his own family and home. He had three children, Rebecca, Richard and Bethany. On the other hand, Sandra was only 14 years old and was living with third-party defendant Hush at the time of the accident.

Plaintiff came to live with third-party defendant Hush because a prolonged illness had kept his mother in the hospital. Rebecca, who was five years old at the time, remained at home with her father. Plaintiff and his twin sister Bethany, who were 14 or 15 months old, were placed with third-party defendant Hush.

The accident occurred when a vaporizer used for the children's colds and kept on a buffet in the Hush's living room was tipped or spilled by plaintiff in attempting to open the drawers of the buffet to get at some children's books kept there. According to third-party defendant Hush, the vaporizer was positioned there because the buffet was the highest piece of furniture in the house.

Third-party defendant Hush testified that the children came to live with her in September of 1967 and stayed with her for three years until September of 1970. Plaintiff continued to live with his grandmother for some time after the accident. Testimony also indicated that she virtually served as their mother during this three-year period. The trial court apparently accepted this fact in deciding that third-party defendant Hush stood *in loco parentis* to plaintiff, which status immunized her from suit and compelled his finding of summary judgment for her.

Defendant Devilbiss contends first that the limited tort immunity granted a parent for negligent acts involved in the exercise of parental authority

over a child does not extend to a grandmother and so does not bar a third-party cause of action for negligence.

In 1972, the Michigan Supreme Court abolished the doctrine of intra-family tort immunity. *Plumley v Klein,* 388 Mich 1; 199 NW2d 169 (1972). However, in so doing, two exceptions to abolition were noted:

> "We are persuaded that the modern rule best serves the interests of justice and fairness to all concerned. The case of *Elias v Collins, supra,* [237 Mich 175; 211 NW 88 (1926)] which provides for intra-family tort immunity is overruled. A child may maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent. Like our sister states, however, we note two exceptions to this new rule of law: (1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." *Plumley v Klein, supra* at 8.

This Court has held that negligent parental supervision comes within the first exception outlined in *Plumley:*

> "Parents have a social and moral obligation to provide maintenance and guidance for their children, and the state benefits from their meeting this obligation. The law does step into this private relationship where the child's well-being is seriously affected. See MCLA 750.135, 750.136, 750.161 *et seq.;* MSA 28.330, 28.331, 28.358 *et seq.* Each parent has unique and inimitable methods and attitudes on how children should be supervised. Likewise, each child requires individualized guidance depending on intuitive concerns which only a parent can understand. Also, different cultural, educational and financial conditions affect the manner in

which different parents supervise their children. Allowing a cause of action for negligent supervision would enable others, ignorant of a case's peculiar familial distinctions and bereft of any standards, to second-guess a parent's management of family affairs considerably beyond these statutory protections." *Paige v Bing Construction Co,* 61 Mich App 480, 485; 233 NW2d 46 (1975), *lv den,* 395 Mich 751 (1975).

The precise issue presented to us on this appeal is one of first impression in Michigan. We must decide whether the limited exception to abolition of intra-family immunity is properly applied to persons standing *in loco parentis* as well as to natural parents. Neither cases applying the old immunity rule nor cases decided since *Plumley* have addressed the availability of immunity to persons standing *in loco parentis.* Both parties agree that defendant Hush is accused of negligently supervising her grandson, minor plaintiff Richard Hush. Therefore, on the authority of *Paige* the immunity doctrine would clearly apply if Hush were the mother of Richard.

Defendant Hush has thoroughly researched the law of other jurisdictions. As noted, few courts have insisted upon distinguishing between natural parents and persons standing *in loco parentis* to the child for purposes of immunity. See Annotation, 41 ALR3d 904, § 11, p 960–963; 67 CJS, Parent and Child, § 61, pp 787–789.

In abolishing the intra-family tort immunity doctrine, the *Plumley* Court followed the lead of the Wisconsin Supreme Court. *Goller v White,* 20 Wis 2d 402; 122 NW2d 193 (1963). In *Goller,* the issue was whether a person standing *in loco parentis* to a minor was immune from suit by the minor for personal injury based upon negligence. The Wisconsin Court took advantage of the opportunity

to abolish the parental immunity rule. They also noted the two exceptions later copied in *Plumley.* Because the defendant there, plaintiff's foster father, had failed to submit an affidavit which would bring him within one of the exceptions, summary judgment in his favor was reversed. The Court did not expressly address the propriety of extending immunity to persons standing *in loco parentis.* However, its statement of the issue and its result clearly reveal that the result would have been no different if defendant had been the natural father of plaintiff. See *McManus v Hinney,* 31 Wis 2d 333; 143 NW2d 1 (1966).

Consequently, we now find necessary a review of the policy considerations which led to the establishment of the immunity rule in order to decide in this case if extension to persons *in loco parentis* is warranted. Such objects as preservation of domestic tranquility and family unity, protection of family resources, and recognition of the need to avoid judicial intervention into the core of parenthood and parental discipline have been most frequently cited as key policy considerations underlying the immunity doctrine. *London Guarantee & Accident Co v Smith,* 242 Minn 211; 64 NW2d 781 (1954), *Holodook v Spencer,* 36 NY2d 35; 364 NYS2d 859; 324 NE2d 338 (1974), *Lyles v Jackson,* 216 Va 797; 223 SE2d 873 (1976), *Rutkowski v Wasko,* 286 App Div 327; 143 NYS2d 1 (1955).

Illustrative of the cases which have recognized extension of immunity to persons standing *in loco parentis* is *London Guarantee, supra.* The Minnesota Supreme Court there found no justification for refusing to apply the rule to stepparents who stood *in loco parentis.* The Court noted that immunity is not granted to parents simply because they are parents, but because of the duties and respon-

sibilities they assume within the household. In their opinion, public policy would be compromised were stepparents discouraged from voluntarily and unselfishly assuming an *in loco parentis* position to a child in need of parental care. In *Rutkowski, supra,* the New York Court shared the sentiments of the Minnesota Court, finding that someone standing *in loco parentis* should get the self-same benefits a natural parent would. Recently, in *Lyles, supra,* the Virginia Supreme Court decided this question in favor of a stepparent standing *in loco parentis.*

We recognize that trials of such matters would be easier if immunity were not granted to persons standing *in loco parentis.* Extension will necessitate a factual determination as to whether a party was indeed standing *in loco parentis* at the time of the relevant events. However, to refuse to extend immunity would contradict the reasoning underlying the rule as to natural parents.

The *Plumley* court was faced with the issue of the immunity of parents. The Court carved out two exceptions to abrogation of immunity. Each exception refers to "parental" functions. The Court did not say that only exercise of authority *by parents* was immune, but rather that exercise of *parental* authority would enjoy immunity. Perhaps this choice of words was not deliberate. On the other hand, the choice could very well have been carefully thought out. If so, Devilbiss' argument that extension would undermine the *Plumley* decision is greatly weakened.

Preservation of the family unit, internal order, and recognition of its autonomy underlie the *Plumley* exception. If someone is genuinely standing *in loco parentis* to a child, a "family unit" is easily recognizable. Someone who voluntarily as-

sumes parental responsibility and attempts to create a home-like environment for a child should be granted immunity from judicial interference to the same extent as a natural parent. Neither the merits of the abrogation of the immunity doctrine, nor the merits of the exceptions defined in *Plumley,* are at issue here.

The *Plumley* decision overruled *Elias v Collins,* 237 Mich 175; 211 NW 88 (1926). That case provided that a minor could not sue his father in court. However, in distinguishing the two exceptions to the abrogation of immunity, the *Plumley* court recognized the continuing limited validity of the policy considerations outlined in *Elias* encouraging the peace of the family and of society.

We now hold that these policy considerations apply in situations legally identifiable as *in loco parentis* as well as conventional family situations. Appellants have not suggested any convincing reason for a contrary result. The intimate relationship between parent and child can surely arise outside genetic bonds. If such a relationship obtains then for purposes of tort immunity no reason exists for distinguishing that person from a natural parent.

Devilbiss next argues that the trial judge erred in finding as a matter of law that third-party defendant Hush was standing *in loco parentis,* that she was therefore immune from suit for negligent supervision, and that as a result her motion for summary judgment should be granted.

Defendant Hush moved for summary judgment under GCR 1963, 117.2(1), failure to state a claim. If third-party defendant had been minor plaintiff's mother, employing this particular motion would have clearly been the correct procedure, since no cause of action exists for negligent parental super-

vision. *Paige v Bing Construction Co, supra* at 481–482, 485–486. Given our present holding that persons standing *in loco parentis* are also protected, we find a motion under Rule 117.2(1) sufficient to place the question before the court for disposition. However, the arguments of the parties at the motion hearing and on appeal, and the final order of the trial court, reveal that the motion in this case was treated as challenging the existence of a genuine issue as to any material fact. GCR 1963, 117.2(3). Consequently, we will review the question of defendant Hush's *in loco parentis* status under this subsection as well. See Bashara, *The Illusive Summary Judgment Rule: Sifting through the Maze,* 1976 Det C L Rev 397, 419–421.

We find enough undisputed evidence on the record to sustain Judge Chrzanowski's holding that defendant Hush stood *in loco parentis* to plaintiff as a matter of law. We find that defendant Hush had been taking care of her grandchildren in her home from September of 1967 until the time of the accident in April of 1968. Indeed, they continued to live with her until September of 1970. Further, her performance of the day-to-day tasks of caring for the young children was undisputed. The fact that the parents were both alive but that the mother was unable to care for the children due to illness was established conclusively.

In opposition to the summary judgment motion, the sole fact to which Devilbiss points is that both parents are alive. However, as defendant Hush observes, this fact is not conclusive as to the lack of existence of *in loco parentis* status. 59 Am Jur 2d, Parent and Child, § 92, p 190; *Baldwin v United States,* 68 F Supp 657 (WD Mo, 1946), *Leyerly v United States,* 162 F2d 79 (CA 10, 1947).

Legally, the assumption of *in loco parentis* status[1] is a question of intent. Intent to assume parental status can be inferred from the acts and declarations of the parties. *Rutkowski v Wasko, supra.* Some factors to consider are the age of the child; the degree to which the child is dependent on the person claiming to be standing *in loco parentis;* the amount of support, if any, provided; the extent to which duties commonly associated with parenthood are exercised. *McManus v Hinney,* 35 Wis 2d 433; 151 NW2d 44 (1967). Providing financial support may be an unimportant consideration in light of the relative situations of the person standing *in loco parentis* and the real parents. In some cases, while providing financial support may be unnecessary, the benefits flowing to the child by reason of someone's assumption of the other infinitely various parental duties may be most essential. *Thomas v United States,* 189 F2d 494 (CA 6, 1951).

In the instant case, no dispute appears as to the basic evidentiary facts. Consequently, in our opinion, the trial judge properly held as a matter of

[1] The various definitions of the term *"in loco parentis"* were compiled in 67 CJS, Parent and Child, § 71, pp 803–804:

"The term 'in loco parentis' has been defined as in the place of a parent; instead of a parent; charged, factitiously, with a parent's rights, duties, and responsibilities; more specifically, the relationship which a person assumes toward a child not his own, holding the child out to the world as a member of his family toward whom he owes the discharge of parental duties. It has been said that the accepted definition of a person in loco parentis is one who means to put himself in the situation of a lawful parent to the child with respect to the office and duty of making provision for it; one assuming the parental character and discharging parental duties; a person standing in loco parentis to a child is one who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption.

*"Distinctions.* One standing in loco parentis has been distinguished from a brother or sister, cousin, or natural parent. Loco parentis differs from adoption in that the one is temporary and the other permanent in nature." (Footnotes omitted.)

law that defendant Hush was acting *in loco parentis* at the time of her grandson's accident. Specifically, she cared for him on a full-time basis during some of the most crucial years in terms of personality and behavioral development. She had cared for him continuously for approximately seven months prior to the accident. She was his primary, if not sole, mother figure and described herself as "just like a mother" to him. Defendant Devilbiss has failed to raise a genuine issue as to her *in loco parentis* status. GCR 1963, 117.2(3). They have shown us no inferences that might be drawn from the undisputed facts which would contradict the trial court's finding. No cause of action was demonstrated. GCR 1963, 117.2(1).

Affirmed. Costs to be paid by defendants-appellants.