[Civ. No. 47298. First Dist., Div. Four. June 5, 1980.]

Estate of CARL LARSON, Deceased.
KENNETH CORY, as State Controller, Petitioner and Respondent, v.
HUGH B. SWENSON, Objector and Appellant.

COUNSEL

Hugh B. Swenson, in pro. per., and Doris Phippen for Objector and Appellant.

Myron Siedorf, Edwin Rosenthal and R. E. Sanderson for Petitioner and Respondent.

OPINION

**CHRISTIAN, J.**—Hugh B. Swenson, the sole beneficiary of the estate of Carl Larson, appeals from an order determining that he is a class C transferee for purposes of inheritance taxation. (Rev. & Tax. Code, § 13309.) The question is whether the court acted correctly when it determined that appellant was not entitled to class A status (Rev. & Tax. Code, § 13307) on the basis of a mutually acknowledged child-parent relationship with the decedent.

Appellant was born in 1919. His parents, Earl and Bessie Swenson, separated when he was six months old, and were divorced in Minnesota soon thereafter. The divorce decree gave Bessie custody of the child and ordered Earl to pay $20 per month child support.

Bessie married Carl Larson in 1925. She, Carl and appellant lived together until Bessie's death in 1955; appellant continued to live with Carl until Carl's death in 1975. Decedent provided appellant with advice, guidance and discipline. From the time appellant was five years old until decedent's death, he treated appellant as his son and was treated by appellant as a father. Appellant used the surname Larson until he was 17 years old, when Bessie caused him to resume use of his father's surname, Swenson, hoping to increase the likelihood that appellant would receive an inheritance from the Swenson family.

Appellant's father continued to pay child support until 1934; support was then discontinued for over two years. In 1936, a Minnesota court reinstituted support payments, ordering the father to pay $25 per month. Support was permanently ended in 1938 pursuant to a final settlement between appellant's parents. During the period that the father made support payments decedent contributed the greater part of appellant's financial support, and during the periods of appellant's minority

when the father made no support payments decedent contributed total financial support.

Communication between appellant and his father was virtually non-existent until 1936 when appellant, then aged seventeen, visited his father in Minnesota for four weeks. Thereafter his father refused to permit appellant to visit him.

The Legislature has prescribed different schedules of inheritance taxation for three classes of transferees. (Rev. & Tax. Code, §§ 13404-13406.) Class A transferees, who are subject to the lowest rates, include: "(a) A transferee who is the husband, wife, lineal ancestor, or lineal issue of the decedent.

"(b) A transferee to whom the decedent for not less than 10 continuous years prior to the transfer *stood in the mutually acknowledged relationship of a parent*, if the relationship commenced on or before the transferee's 15th birthday.

"(c) A transferee who is the lineal issue of a child mentioned in subdivision (b)." (Rev. & Tax. Code, § 13307; italics added.) Class C transferees, who include "any transferee who is not a class A or B transferee," are subject to the highest rates of taxation. (Rev. & Tax. Code, § 13309.)[1] ■ Appellant contends that the trial court erred when it concluded that he was subject to taxation as a class C transferee of decedent. The argument is that he is a class A transferee because decedent "stood in the mutually acknowledged relationship of a parent" as prescribed by Revenue and Taxation Code section 13307, subdivision (b).

The few decisions that have construed the statutory phrase "mutually acknowledged relationship of a parent" generally agree that the phrase connotes a status *in loco parentis*, which "'...refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption....'" (*Estate of Teddy* (1963) 214 Cal.App.2d 113, 119 [29 Cal.Rptr. 402], quoting *Niewiadomski* v.

---

[1]Class B transferees include: "(a) A transferee who is the brother, sister, or descendant of a brother or sister of the decedent.
"(b) A transferee who is the wife or widow of a son, or the husband or widower of a daughter, of the decedent." (Rev. & Tax. Code, § 13308.)

*United States* (6th Cir. 1947) 159 F.2d 683, 686, cert. den. 331 U.S. 850 [91 L.Ed. 1859, 67 S.Ct. 1730]; cf. *Loomis* v. *State of California* (1964) 228 Cal.App.2d 820, 823-825 [39 Cal.Rptr. 820] [same phrase in gift taxation statute, Rev. & Tax. Code, § 15110, subd. (b)]; see also *Estate of Wilts* (1978) 80 Cal.App.3d 599, 602 [145 Cal.Rptr. 759].) Upon the apparent assumption that *in loco parentis* embodies more stringent requirements than the language of section 13307, subdivision (b), appellant argues that the statutory phrase is not equivalent to the concept of *in loco parentis*, citing *Estate of Wilts, supra*, 80 Cal.App. 3d at page 602. The argument is without merit.

In *Estate of Wilts* the court said that the comparison of the statutory phrase to the concept of *in loco parentis* "could suggest that the relationship must be precisely the same as natural parent and child. Section 13307, subdivision (b) is not so narrow in its meaning. The law recognizes that although a natural parent-child relationship may exist elsewhere, if the parties regard each other in all of the usual incidents and relationships of family life as parent and child, the benefits of Class A transferee accrue." (80 Cal.App.3d at p. 602.) The court did not question the soundness of the comparison, but instead rejected any suggestion that the relationship required by section 13307 must be the same as a natural parent-child relationship. The court's conclusion that the statutory relationship may exist "if the parties regard each other in all of the usual incidents and relationships of family life as parent and child" is virtually identical, as to the surrogate parent, to the definition of *in loco parentis*. The court also restated the holding in *Estate of Teddy, supra*, 214 Cal.App.2d at page 119, that "the recognized criteria of a mutually acknowledged relationship of parent are the intentional assumption of parental status and the commensurate assumption of parental duties." (*Ibid.*) These criteria are virtually identical to the elements of an *in loco parentis* relationship.

The concept of *in loco parentis* actually includes requirements less stringent than those of section 13307, subdivision (b). The former requires only that the surrogate parent has assumed the obligations incidental to the parental relationship, while the latter imposes an additional requirement that both parties have acknowledged the relationship. (See *id.*, at p. 603.)

Appellant alternatively contends that payment of child support by a transferee's natural father does not necessarily defeat section 13307, subdivision (b), status because the concept of *in loco parentis* does not

require the surrogate parent to assume an obligation of total or exclusive support. *Estate of Wilts* supports this position. There the court reviewed the following factors to determine whether a section 11307, subdivision (b), relationship had been established in that case: "relationship by blood or marriage; the reception of the child into the home and treatment of the child as a member of the family; *an assumption of the responsibility for support beyond occasional gifts and financial aid*; an exercise of parental authority in discipline; advice and guidance to the child; and a sharing of time and affection." (80 Cal.App.3d at p. 603; italics added.) The opinion implies that an assumption of an obligation of exclusive support is not essential. The court in *Estate of Teddy* did state that "'. . . responsibility for the support of the child'" is foremost among the obligations inherent in the concept of *in loco parentis* (214 Cal.App.2d at p. 119, citing *Strauss v. United States* (2d Cir. 1947) 160 F.2d 1017, cert. den. 331 U.S. 850 [91 L.Ed. 1859, 67 S.Ct. 1741]; italics deleted), but *total* support has not been required by any California decision.

Courts have found persons to have stood *in loco parentis* despite the existence of other sources of support for the child. In *In re Dowell's Estate* (1948) 149 Neb. 599, 600, 601 [31 N.W.2d 745, 746], involving interpretation of a statute similar to section 13307, subdivision (b), the court upheld the trial court's determination that a transferee's aunt stood in "the acknowledged relation of a parent" for purposes of imposition of lower rates of inheritance taxation, even though the child had been partially supported by money inherited from her deceased mother. A grandmother was held in *Hush v. Devilbiss Co.* (1977) 77 Mich.App. 639, 649 [259 N.W.2d 170, 174-175], to have stood *in loco parentis* for purposes of intrafamily immunity from tort liability; in analyzing the concept of *in loco parentis* the court stated that provision of financial support is not an absolute requirement but is only one factor to be considered. (See also *Baumet v. United States* (2d Cir. 1951) 191 F.2d 194, 196, revd. on other grounds (1952) 344 U.S. 82, 84 [97 L.Ed. 111, 113, 73 S.Ct. 122]; *Lorden v. United States* (D.Mass. 1949) 83 F.Supp. 822, 823 [both finding *in loco parentis* relationship for purposes of National Service Life Insurance benefits despite receipt of support from sources other than surrogate parent].)

Respondent contends that section 13307 must be strictly construed against appellant. There is some conflict in the decisions on this point. The court in *Estate of de Roulet* (1971) 20 Cal.App.3d 1072, 1076 [98 Cal.Rptr. 277], held that section 13307 is an exemption statute and

therefore must be strictly construed against the taxpayer. Other courts have held that section 13307 and the comparable gift taxation statute, Revenue and Taxation Code section 15110, are not exemption statutes and thus are to be construed in favor of the taxpayer. (*Estate of Morris* (1943) 56 Cal.App.2d 715, 727 [133 P.2d 452] [Rev. & Tax. Code, § 13307]; *Loomis* v. *State of California, supra,* 228 Cal.App.2d at p. 825 [Rev. & Tax. Code, § 15110].) The conflict is unimportant here. Strict construction within the context of the present appeal demands no more than a construction of section 13307 as embodying the concept of *in loco parentis,* which does not require provision of total support by the surrogate parent.

We conclude that the determination whether a transferor stood in the mutually acknowledged relationship of a parent pursuant to section 13307, subdivision (b), requires resolution of factual issues by the trial court. The court is to consider all pertinent factors, such as those prescribed in *Estate of Wilts, supra,* 80 Cal.App.3d at page 603. The existence of a source of some support other than the alleged surrogate parent, e.g., from a natural parent, may suggest that the transferor did not acknowledge the child as a son or daughter, but does not necessarily compel such a conclusion. It is merely one factor for the court to consider.

Respondent argues that the relationship recognized in section 13307, subdivision (b), is precluded by the support payments from appellant's natural father because only one person at a time can stand in the mutually acknowledged relationship of a father. (See *Hart* v. *Neeld* (1956) 21 N.J. 479 [122 A.2d 611].) But there was evidence that appellant's natural father did not stand in this relationship, i.e., that appellant and his natural father did not "regard each other in all of the usual incidents and relationships of family life as parent and child." (*Estate of Wilts, supra,* 80 Cal.App.3d at p. 602.) Appellant's natural father did make support payments under court order, but even if the amount of these support payments was sufficient to discharge an assumed obligation to support the child, despite the evidence to the contrary, they did not compel a conclusion that appellant's natural father stood in the mutually acknowledged relationship of a father. The responsibility for the support of the child is "foremost" among the obligations of a person standing *in loco parentis (Estate of Teddy, supra,* 214 Cal.App.2d at p. 119, quoting *Strauss* v. *United States* (2d Cir. 1947) 160 F.2d 1017, 1018, cert. den. 331 U.S. 850 [91 L.Ed. 1859, 67 S.Ct. 1741]), but its assumption does not necessarily establish the statutory mutually ac-

knowledged relationship of a parent. All objective factors are to be considered. (*Estate of Wilts, supra*, 80 Cal.App.3d at pp. 602-603.)

The parties present conflicting analyses of the evidence received at trial as to whether the decedent, or appellant's natural father, stood in the mutually acknowledged relationship of a parent. Appellant argues that, of the many factors to be considered by the trial court, only one, the provision of less than total support by the surrogate parent, weighs against the required mutually acknowledged relationship between appellant and the decedent. ■ Appellate review, however, is generally limited to a determination whether substantial evidence supported the judgment. The evidence that decedent did not totally support appellant during most of appellant's youth is slight by comparison to the evidence supporting a finding of class A status, but it would support a conclusion that the decedent did not stand in the mutually acknowledged relationship of a parent. Such a conclusion would not be disturbed on appeal solely because it appeared to be against the weight of the evidence. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 249, p. 4241.)

However, the basis for application of the substantial evidence rule is the theory that the trier of fact is in the best position to determine the value and weight to be attributed to evidence. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 246, pp. 4238-4239.) The rule thus operates only where it can be presumed that the court has performed its function of weighing the evidence. If analysis of the record suggests the contrary, the rule should not be invoked. (See *Prescott* v. *O'Connell* (1938) 27 Cal.App.2d 220, 222-223 [80 Cal.Rptr. 749]; *Steuri* v. *Junkin* (1938) 27 Cal.App.2d 758, 760 [82 P.2d 34] [appellate courts to indulge in all presumptions to support judgment only where record is silent as to what was done by the trial court].)

■ The substantial evidence rule would support the judgment in the present case only if the trial court found appellant to be a class C transferee by weighing the various relevant factors and determining that decedent had not assumed an obligation to support appellant and had not stood in the mutually acknowledged relationship of a parent. The record strongly indicates that this did not happen. After the court issued a memorandum of decision assigning class C status, appellant asked the court to make findings and conclusions determining an issue not of fact but of law: must a decedent have provided a child with total support to have stood in a "mutually acknowledged relationship of a parent?" The court did not address this issue in its findings and conclu-

sions, but the findings which the court did make strongly suggest that the court believed total support, rather than some lesser amount of non-exclusive support, was requisite to a class A status. The court found that appellant "was treated by decedent as a son and treated decedent as a father," and that "[t]he mutual relationship commonly expected of a father and son existed between [appellant] and decedent from the time [appellant] was five years of age until decedent's death. These findings, standing alone, would compel a conclusion that appellant was a class A transferee. The court's assignment of class C status could only have been based on the further finding, which the court apparently regarded as determinative, that appellant's natural father had "contributed" to his support, pursuant to a court order. As we have seen that circumstance, though relevant as evidence, is not determinative.

The judgment is reversed with directions to weigh all relevant factors and determine whether the decedent stood in a mutually acknowledged relationship of a parent as required by Revenue and Taxation Code section 13307, subdivision (b). The court may take further evidence on its own motion or at the request of any party.

Rattigan, Acting P. J., and Poché, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 30, 1980.