*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARTINA CIARAMITARO, by Next Friend
MARIA CIARAMITARO,

UNPUBLISHED
February 25, 2021

Plaintiff-Appellant,

v

No. 350227
Macomb Circuit Court
LC No. 2018-002503-NO

CARMINA RUGGERO, also known as
CARMELINA RUGGERO, and ARIANA
RUGGERO, by Next Friend CARMINA
RUGGERO, also known as CARMELINA
RUGGERO,

Defendants-Appellees.

Before: JANSEN, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Plaintiff, by her next friend Maria Ciaramitaro (Maria), appeals as of right the order granting summary disposition in favor of defendants, Carmina Ruggero, also known as Carmelina Ruggero (Carmelina), individually and as next friend of Ariana Ruggero (Ariana). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On June 24, 2016, plaintiff, Ariana, and several other children were at Carmelina's home using a device called a swing trainer to practice hitting a baseball with a metal baseball bat. As part of this activity, the children took turns using a single baseball bat. While one child used the baseball bat, the rest of the children waited in line behind the batter. When it was Ariana's turn to use the swing trainer, she swung the baseball bat and inadvertently struck plaintiff in the face. As a result, plaintiff suffered serious injuries.

Plaintiff filed the instant lawsuit seeking to recover damages from Ariana and Carmelina. Plaintiff alleged that Ariana was acting negligently when she struck plaintiff in the mouth with a baseball bat, and that Carmelina was negligent by failing to supervise Ariana and plaintiff while they were at Carmelina's home. Defendants moved for summary disposition under MCR

-1-

2.116(C)(10), and the trial court issued an opinion and entered an order granting defendants' motion. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. When considering a motion under MCR 2.116(C)(10), the trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (citation and quotation marks omitted). Furthermore, the issue of the applicable standard of care is a question of law that this Court reviews de novo. *Composto v Albrecht*, 328 Mich App 496, 499; 938 NW2d 755 (2019) (citation omitted).

## III. ANALYSIS

### A. PLAINTIFF'S CLAIM AGAINST ARIANA

Plaintiff first argues on appeal that the trial court erred by granting summary disposition in favor of defendants with respect to plaintiff's claim against Ariana. We disagree.

In order to establish a prima facie case of negligence, a plaintiff must establish "(1) duty owed by the defendant to the plaintiff, (2) breach of that duty by the defendant, (3) damages suffered by the plaintiff, and (4) that the damages were caused by the defendant's breach of duty." *Id*. (citation omitted). "Duty is the legal obligation to conform one's conduct to a particular standard to avoid subjecting others to an unreasonable risk of harm." *Id*. (citation omitted). "The duty a defendant typically owes to a plaintiff often is described as an ordinary-negligence standard of care." *Id*. at 499-500 (citation omitted). "Under ordinary-negligence principles, a defendant owes a plaintiff a duty to exercise ordinary care under the circumstances." *Id*. at 500 (citation omitted). Nevertheless, the Michigan Supreme Court has held that "coparticipants in recreational activities owe each other a duty not to act recklessly." *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 75; 597 NW2d 517 (1999). The Michigan Supreme Court has explained this standard as follows:

> [W]hen people engage in a recreational activity, they have voluntarily subjected themselves to certain risks inherent in that activity. As a result, coparticipants in a recreational activity owe each other a duty not to act recklessly. This recklessness standard of care, however, extends only to injuries that arise from risks inherent to the activity. Therefore, to determine the standard of care applicable when an injury arises involving coparticipants in a recreational activity, a court must consider whether the injuries arose from risks inherent in that recreational activity. [*Composto*, 328 Mich App at 500 (citations, quotation marks, and brackets omitted).]

-2-

In adopting this standard, the Michigan Supreme Court noted that it set forth the standard as applying broadly to all recreational activities, however, "the precise scope of this rule is best established by allowing it to emerge on a case-by-case basis, so that we might carefully consider the application of the recklessness standard in various factual contexts." *Ritchie-Gamester*, 461 Mich at 89, n 9.

We conclude that the trial court did not err when it determined that the reckless-misconduct standard applied where plaintiff and Ariana were coparticipants in a recreational activity, and plaintiff's injuries arose from inherent risks associated with that recreational activity. As an initial matter, plaintiff asserts that the children's use of a swing trainer to practice baseball cannot be considered a recreational activity because it was neither an organized sporting activity nor an informal activity taking place at a site specifically designated for such an activity. We disagree.

When considering whether to apply the reckless-misconduct standard, Michigan courts have generally refrained from narrowly defining what activities may be considered recreational. For instance, in *Composto*, 328 Mich App at 502, this Court determined that the parties were coparticipants in a recreational activity based upon their shared use of a multipurpose trail designated for hiking and bicycling. Additionally, in *Ritchie-Gamester*, 461 Mich at 89, the Michigan Supreme Court determined that the parties were coparticipants in a recreational activity based upon their mutual participation in an "open skate" period at an ice rink. Indeed, none of these activities had competition or formal rules. Thus, the children's use of a swing trainer to practice baseball is a recreational activity for purposes of considering whether the reckless-misconduct standard is applicable.

Plaintiff further asserts that she was not a coparticipant in a recreational activity with Ariana because plaintiff was simply observing Ariana using the swing trainer rather than using it herself. Again, we disagree. In *Composto*, 328 Mich App at 502, this Court determined that the parties were coparticipants in a recreational activity based upon their shared use of a multipurpose trail designated for hiking and bicycling. Although the parties were engaged in the inherently distinct activities of walking and biking, the parties were both present for the same reason of utilizing a multipurpose trail. *Id*. at 502-503.

Likewise, in the instant matter, although Ariana and plaintiff were engaged in inherently distinct activities of swinging a baseball bat and standing nearby, they were both present for the purpose of using the swing trainer. During their depositions, plaintiff, Ariana, and another child each testified that they were engaging in the activity of using the swing trainer when plaintiff's injuries occurred. According to the children, only one person could use the swing trainer at any given time. For this reason, the rest of the children stood in line and waited for their turn while the swing trainer was in use. Notably, plaintiff testified that she went to the front yard to play with the swing trainer, and plaintiff was either first or second in line and waiting to use the swing trainer when she was struck with the baseball bat. The record evidence before us is clear that plaintiff was in line for the purpose of using the swing trainer, and therefore plaintiff's claim that she was merely observing Ariana when plaintiff was struck with the baseball bat lacks merit. We therefore conclude that the trial court did not err when it determined that plaintiff and Ariana were coparticipants in a recreational activity.

The next inquiry thus becomes whether plaintiff's injuries arose from inherent risks associated with using a swing trainer. The reckless-misconduct standard of care extends only to injuries that arise from risks inherent in a recreational activity. *Composto*, 328 Mich App at 500. "[T]he assessment of whether a risk is inherent to an activity depends on whether a reasonable person under the circumstances would have foreseen the particular risk that led to injury." *Bertin v Mann*, 502 Mich 603, 619; 918 NW2d 707 (2018). "If so, then the risk is inherent and the reckless-misconduct standard of care applies." *Id*. "The risk must be defined by the factual circumstances of the case—it is not enough that the participant could foresee being injured in general; the participant must have been able to foresee that the injury could arise through the 'mechanism' it resulted from." *Id*. at 620-621 (citation omitted). "Relatedly, those factual circumstances include the general characteristics of the participants, such as their relationship to each other and to the activity and their experience with the sport." *Id*. at 621 (citations omitted). Although the foreseeability of this type of risk is generally a question of fact, "[i]f no genuine issue of material fact remains, then a court can decide the issue under MCR 2.116(C)(10)." *Id*. at 619 n 49.

The trial court correctly determined that there was no genuine issue of material fact that a reasonable person under the circumstances would have foreseen the risks associated with using a swing trainer. Indeed, we conclude that plaintiff's injuries arose from inherent risks associated with using a swing trainer. At the outset, we acknowledge that on that date plaintiff's injuries occurred, plaintiff was nine years old and had never used a swing trainer before. Despite plaintiff's age and relative inexperience using a swing trainer, a reasonable person under the circumstances would have foreseen the risks associated with the activity. Ariana testified that the rules of using a swing trainer were simple, and the other children knew to stand back while one person swung the baseball bat. Another child testified that he instructed all of the children to stand back while Ariana was swinging the baseball bat; this indicates that other children present at the time of plaintiff's injury were aware of the danger of being struck by the baseball bat. Finally, the purpose of the swing trainer is to practice one's baseball swing, and swinging a baseball bat is inherent in the proper use of a swing trainer. A reasonable person could have foreseen that an injury could arise through the mechanism of swinging a baseball bat. For these reasons, plaintiff's injuries arose from inherent risks associated with using a swing trainer, and Ariana owed plaintiff a duty to refrain from acting in a reckless manner.

Finally, we conclude that no genuine issue of material fact existed regarding whether Ariana acted recklessly: Ariana's actions, while careless, did not rise to the level of recklessness. Reckless misconduct has been described as follows:

> One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence. His conduct must be such as to put him in the class with the wilful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not. [*Behar v Fox*, 249 Mich App 314, 319; 642 NW2d 426 (2001) (citation omitted).]

-4-

Stated differently, an individual's actions constitute reckless misconduct if an individual demonstrates a willingness or indifference to causing harm to another.

The evidence of record reflects that Ariana did not look behind her before swinging the baseball bat. While a reasonable person could conclude that Ariana's decision to swing the baseball bat was careless, it does not rise to the level of willingness or indifference to causing harm to another. Indeed, Ariana testified that she saw plaintiff standing behind her before swinging the baseball bat and she believed that she was able to swing the baseball bat without hitting plaintiff or anyone else. Furthermore, Ariana was not indiscriminately swinging the baseball bat with others nearby. Rather, Ariana was doing so as part of the parties' collective decision to use the swing trainer. There was no evidence presented that Ariana swung the baseball bat with a willingness or indifference to strike another person. Accordingly, there is no genuine issue of material fact regarding whether Ariana acted recklessly: she did not. Thus, the trial court did not err by granting summary disposition in favor of defendants with respect to plaintiff's claims against Ariana.

## B.  PLAINTIFF'S CLAIM AGAINST CARMELINA

Plaintiff also argues that the trial court erred by granting summary disposition in favor of defendants with respect to plaintiff's claims against Carmelina. We agree.

On appeal, with respect to her claims against Carmelina, plaintiff first argues that the trial court erred when it determined that Carmelina could not be held liable under a negligent supervision theory based upon its prior determination that no genuine issue of material fact remained regarding whether Ariana breached her duty to refrain from engaging in reckless misconduct. We agree.

Under Michigan law, "parents have a duty to supervise their own children, or determine that their children are of sufficient age and maturity to no longer need such supervision." *Estate of Goodwin v Northwest Mich Fair Ass'n*, 325 Mich App 129, 142; 923 NW2d 894 (2018) (citation and quotation marks omitted). The duty to supervise one's child includes an obligation to ensure that the child's behavior does not involve a danger to the child or other persons. *Id*. Accordingly, "[a]n injured party has a cause of action against the parent of a child where the person is injured by the negligent act of the child which proximately results from negligent parental supervision over the child." *Zokas v Friend*, 134 Mich App 437, 443; 351 NW2d 859 (1984) (citation omitted). However, this Court has held that a parent cannot be held liable under a theory of negligent supervision if their child was not negligent because no cause of action would arise against the child or the parent. *Id*.

Following a thorough review of the record before us, we conclude that a genuine issue of material fact remains regarding whether Ariana acted negligently, and therefore, the trial court erred when it determined that Carmelina could not be held liable for her negligent supervision of Ariana. "It is well-established under Michigan law that minors are not held to the same standard of care as adults." *Bragen ex rel Bragen v Symanzik*, 263 Mich App 324, 328; 687 NW2d 881 (2004). "Minors are required only to exercise that degree of care which a reasonably careful minor of the age, mental capacity and experience of other similarly situated minors would exercise under the circumstances." *Id*. (citations and quotation marks omitted). The evidence of record reflects

that Ariana was 10 years old on the date of plaintiff's injuries, and Ariana had used the swing trainer in the past. Ariana did not look behind her before swinging the baseball bat, believing that she could swing the baseball bat without hitting any individuals standing nearby. Based upon this evidence, a reasonable jury could determine that Ariana breached her duty to exercise a degree of care which a reasonably careful minor of the same age, mental capacity, and experience would exercise under the circumstances. Accordingly, we conclude that the trial court erred when it determined that Carmelina could not be held liable for her negligent supervision of Ariana based upon its prior determination that there was no genuine issue of material fact regarding whether Ariana breached her duty to refrain from engaging in reckless misconduct.

Moreover, we conclude that the trial court erred when it determined that Carmelina could not be held liable for plaintiff's injuries where a genuine issue of material fact remains regarding whether Carmelina had an affirmative duty to supervise plaintiff. This Court has recognized a distinct theory of liability in the context of a claim for ordinary negligence arising from a premises owner's failure to supervise a minor guest on their property. Under this theory of liability, "defendant landowners have an affirmative duty to supervise minor guests only when a minor guest is unaccompanied by a parent and the defendant has voluntarily assumed a duty to supervise the child." *Wheeler v Central Mich Inns, Inc*, 292 Mich App 300, 306; 807 NW2d 909 (2011), citing *Stopczynski v Woodcox*, 258 Mich App 226, 236; 671 NW2d 119 (2003) (italics omitted). One may voluntarily assume a duty to supervise a child by inviting the child to their home. *Stopczynski*, 258 Mich App at 236.

In granting defendants' motion for summary disposition, the trial court reasoned that Carmelina could not be held liable under a theory of negligent supervision because no genuine issue of material fact remained regarding whether Ariana breached her duty to refrain from acting in a reckless manner. In doing so, the trial court appeared to conflate Carmelina's duty to supervise her own children and Carmelina's duty to supervise minor guests on her property. We conclude that there does exist a genuine issue of material fact regarding whether Carmelina voluntarily assumed a duty to supervise plaintiff and, therefore, summary disposition was inappropriate. The parties do not dispute that plaintiff was unaccompanied by her mother at Carmelina's home. Additionally, Carmelina testified that she did not invite plaintiff to her home. Similarly, plaintiff testified that the children made the decision to walk from the home of Carmelina's cousin to Carmelina's home without asking the adults that were present, and one of the minor children recalled that Carmelina's son only invited his brother over for dinner. In contrast, Maria testified that Carmelina invited all of the children to her home for dinner, and Carmelina arranged to call Maria after dinner was over in order for Maria to come pick up her children. Additionally, Carmelina made dinner for plaintiff after plaintiff arrived at Carmelina's home. Based upon this conflicting evidence, there exists a genuine issue of material fact regarding whether Carmelina assumed a duty to supervise plaintiff.

As an alternate ground for affirming the trial court's opinion and order granting defendants' motion for summary disposition, defendants assert that Carmelina is immune from liability for her alleged failure to supervise plaintiff because Carmelina was standing *in loco parentis* to plaintiff. We disagree.

"Although parents undoubtedly have a duty to supervise their children, the law generally does not allow children to recover damages from their parents for a breach of this duty." *Estate of*

-6-

*Goodwin*, 325 Mich App at 143. At common law, a minor could not sue his or her parents in tort. *Id*. The Michigan Supreme Court generally abolished intrafamily tort immunity in *Plumley v Klein*, 388 Mich 1, 8; 199 NW2d 169 (1972). *Estate of Goodwin*, 325 Mich App at 143. However, the Michigan Supreme Court retained two exceptions to this rule, one of which provided that parental immunity remained "where the alleged negligent act involves an exercise of reasonable parental authority over the child[.]" *Plumley*, 388 Mich at 8. A claim for negligent parental supervision falls within this exception, "meaning that a parent is granted immunity and a child may not sue a parent for negligent supervision." *Estate of Goodwin*, 325 Mich App at 144 (citations omitted).

Parental immunity for negligent supervision extends to individuals standing *in loco parentis* to a child. *Hush v Devilbiss Co*, 77 Mich App 639, 650; 259 NW2d 170 (1977). The assumption of *in loco parentis* status is a question of intent, and intent to assume parental status can be inferred from the acts or declarations of the parties. *Id*. at 649. "Some factors to consider are the age of the child; the degree to which the child is dependent on the person claiming to be standing *in loco parentis*; the amount of support, if any, provided; [and] the extent to which duties commonly associated with parenthood are exercised." *Id*. (citation omitted).

Carmelina may not assert parental immunity for her alleged negligent supervision of plaintiff because Carmelina was not standing *in loco parentis* to plaintiff. Defendants did not present any evidence that Carmelina intended to assume parental status over plaintiff by making any declarations to do so. Furthermore, defendants did not present any evidence that Carmelina committed acts that would indicate her intent to assume parental status over plaintiff. There was no evidence that Carmelina provided financial support for plaintiff, and there was no evidence that Carmelina intended to allow plaintiff to remain at her home for an extended period of time. Rather, the parties did not dispute that plaintiff was temporarily spending time at Carmelina's home as a social guest. Finally, defendant did not present any evidence that Carmelina exercised duties that were commonly associated with parenthood. Other than cooking a single meal for plaintiff, Carmelina did not make any decisions regarding plaintiff's wellbeing, and Carmelina did not make any arrangements for plaintiff's long-term care. Accordingly, Carmelina is not immune from liability for her alleged failure to supervise plaintiff because Carmelina was not standing *in loco parentis* to plaintiff.

Defendants also argue as an additional alternative ground for affirmance, that plaintiff's negligent supervision claim fails because there was no genuine issue of material fact regarding whether Carmelina's alleged negligent supervision caused plaintiff's injuries. We disagree.

"Proximate causation is a required element of a negligence claim." *Patrick v Turkelson*, 322 Mich App 595, 616; 913 NW2d 369 (2018) (citation omitted). "Causation is an issue that is typically reserved for the trier of fact unless there is no dispute of material fact." *Id*. (citation omitted). "To establish proximate cause, the plaintiff must prove the existence of both cause in fact and legal cause." *Id*. (citation and quotation marks omitted). "Establishing cause in fact requires the plaintiff to present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id*. at 617 (citation and quotation marks omitted). Although causation may not be established by mere speculation, "a plaintiff's evidence of causation is sufficient at the summary disposition stage to create a question of fact for the jury if it establishes a logical sequence of cause and effect,

notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support[.]" *Id*. (citation and quotation marks omitted).

In order to establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and "the result of that conduct and intervening causes were foreseeable." *Id*. (citation and quotation marks omitted). "When judging the foreseeability of a risk of harm, it is not necessary that the manner in which a person might suffer injury should be foreseen or anticipated in specific detail." *Id*. at 618 (citation, quotation marks, and brackets omitted). Stated differently, if an act is negligent, "it is not necessary that the one committing it might have foreseen the particular consequence or injury, or the particular manner in which it occurred, if by the exercise of reasonable care it might have been anticipated that some injury might occur." *Id*. (citation and quotation marks omitted).

We conclude that a genuine issue of material fact does remain regarding whether Carmelina's alleged negligent supervision was the cause in fact of plaintiff's injuries. During Carmelina's deposition, Carmelina testified that if she had been supervising the children in the front yard, she would have instructed plaintiff not to move while Ariana was swinging the baseball bat. It is unclear whether plaintiff would have heeded Carmelina's warning, especially considering Alessio's testimony that plaintiff ignored his warning to stand clear when others were swinging the baseball bat. Nevertheless, Carmelina's testimony is sufficient to establish a logical sequence of cause and effect indicating that plaintiff's injuries may not have occurred if Carmelina had been supervising the children in the front yard. Therefore, the evidence is sufficient to create a question of fact for the jury to determine whether Carmelina's actions were the cause in fact of plaintiff's injuries.

Further, there is also a genuine issue of material fact regarding whether Carmelina's failure to supervise the children in the front yard was the legal cause of plaintiff's injuries. In considering whether plaintiff's injuries were foreseeable, it is not necessary that Carmelina might have foreseen the particular manner in which plaintiff's injuries arose. Rather, it is only necessary that Carmelina might have anticipated that an injury would occur based upon her failure to supervise the children, and plaintiff specifically, in the front yard. The evidence presented in the trial court showed that the ages of the children playing in the front yard spanned from 9 years old to 12 years old, and that the children required supervision for the majority of the day. There was no evidence that that circumstances changed such that the children no longer needed supervision. Accordingly, regardless of whether Carmelina might have foreseen the particular manner in which plaintiff's injuries arose from the children's use of the swing trainer, there is a genuine issue of material fact regarding whether plaintiff's injury was a foreseeable consequence of Carmelina's failure to supervise the children, and plaintiff specifically, in the front yard. Thus, there is a genuine issue of material fact regarding whether Carmelina was the cause in fact and legal cause of plaintiff's injuries.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Michael J. Riordan