# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## BERTIN v MANN

Docket No. 155266. Argued on application for leave to appeal April 25, 2018. Decided July 25, 2018.

Kenneth Bertin brought an action against Douglas Mann in the Oakland Circuit Court, alleging that defendant was negligent in operating a golf cart when defendant hit plaintiff with the cart while the parties were playing a round of golf. The parties offered differing accounts of how the accident occurred. Plaintiff alleged that he had parked the cart and begun walking to his ball when he was suddenly struck by the cart driven by defendant, at which point plaintiff fell to the ground and was hit a second time with the cart. Defendant alleged that when he began accelerating, plaintiff stepped in front of the cart and was hit. Before trial, plaintiff filed a motion in limine arguing that the court should hold defendant negligent as a matter of law. Defendant responded by arguing that the proper standard of care was "reckless misconduct" under *Ritchie-Gamester v City of Berkley*, 461 Mich 73 (1999), because the parties were coparticipants in a recreational activity when the accident occurred. The court, Martha D. Anderson, J., denied the motion but did not resolve the applicable standard of care. The issue arose again when the parties filed jury instructions, with plaintiff proposing an instruction on negligence and defendant proposing an instruction on reckless misconduct, and the court concluded that reckless misconduct was the appropriate standard. At trial, the jury found that defendant's action did not constitute reckless misconduct. Plaintiff appealed in the Court of Appeals, and the Court of Appeals, GADOLA, P.J., and FORT HOOD and RIORDAN, JJ., reversed, holding that the ordinary-negligence standard should have been applied because the risks posed by the golf cart were not inherent in the game of golf. 318 Mich App 425 (2016). The Court of Appeals rejected the argument that inherent risks were merely foreseeable risks, instead holding that "inherent" means something necessary or intrinsic to the activity, without which the activity could not take place. Given the relatively recent advent of the golf cart, the lack of any official rule referring to carts as inherent aspects of golf, and the fact that there was no evidence in the instant case that the golf course where the accident occurred required the use of golf carts, the Court of Appeals concluded that risks associated with carts were not inherent to golf. Accordingly, the Court of Appeals, finding a question of fact regarding defendant's negligence, vacated the jury verdict and remanded the case to the trial court. Defendant sought leave to appeal in the Supreme Court, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 501 Mich 869 (2017).

In a unanimous opinion by Justice VIVIANO, the Supreme Court, in lieu of granting leave to appeal, *held*:

Coparticipants in a recreational activity owe each other a duty not to act recklessly. However, this standard only applies to injuries that arise from risks inherent to the activity. Whether a risk is inherent to a recreational activity depends on whether a reasonable person under the circumstances would have foreseen the particular risk that led to the injury. If a reasonable person could have foreseen the particular risk, then the risk is inherent and the reckless-misconduct standard applies. The risk must be defined by the factual circumstances of the case—it is not enough that the participant could foresee being injured in general; the participant must have been able to foresee that the injury could arise through the mechanism it resulted from. The factual circumstances to be considered include, among other things, the general characteristics of the participants, such as their relationship to each other and to the activity and their experience with the sport. The general rules of the activity can also be considered; however, those rules are not dispositive, and it is also relevant whether the participants engaged in any regular departures from the rules or other practices not accounted for by the rules. Also relevant are any regulations prescribed by the venue at which the activity is taking place. Accordingly, "inherent risks" under *Ritchie-Gamester* are those that are reasonably foreseeable under the circumstances of the case. In this case, the Court of Appeals erred by meditating upon golf's essence and discerning that golf carts are not within the essence of the sport. This approach is not suited to judicial decision-making, or even legal reasoning, because it represents a sort of philosophical essentialism that posits the existence of abstract essences that courts must discern. Judges have no special insight regarding the nature of golf and, in general, should not be in the business of policing the boundaries of sports. Instead, the proper analysis is whether the risk was reasonably foreseeable. Therefore, the case had to be remanded to the Oakland Circuit Court for that court to determine whether there was a genuine issue of material fact that a participant in the activity in question would, under the circumstances, have reasonably foreseen the risk of this particular injury. If the court finds that there is no genuine issue of material fact that the risk was reasonably foreseeable and the recklessness standard applies, defendant is entitled to the benefit of the jury verdict finding that he was not reckless, and the case shall be dismissed. Conversely, if the trial court finds that there is no genuine issue of material fact that the risk was not reasonably foreseeable and the negligence standard applies, plaintiff is entitled to a new trial. Finally, if the trial court finds a genuine issue of material fact regarding the foreseeability of the risk, the court shall undertake further proceedings not inconsistent with this opinion.

Reversed and remanded.

©2018 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

FILED July 25, 2018

S T A T E   O F   M I C H I G A N

SUPREME COURT

KENNETH BERTIN,

       Plaintiff-Appellee,

v                                     No. 155266

DOUGLAS MANN,

       Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

VIVIANO, J.

At issue in this tort case is whether getting hit by a golf cart is an inherent risk of golfing. If so, then defendant, who ran over plaintiff with a cart while golfing, owed a duty only to refrain from reckless misconduct, but cannot be held liable for negligent conduct. If not, then defendant will be held to the negligence standard of conduct. The question boils down to how we determine which risks in a recreational activity are inherent, such that the reckless standard of conduct applies. The Court of Appeals

answered this question by meditating upon golf's essence and discerning that golf carts are not within the essence of the sport. We decline to endorse this philosophical mode of analysis. Instead, when determining whether a risk is inherent in a recreational activity for purposes of establishing the relevant standard of conduct, the fact-finder should ask whether the risk was reasonably foreseeable. Because the courts below did not apply this test, we reverse the judgment of the Court of Appeals and remand the case to the trial court for consideration of this issue.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant were enjoying a round of golf together on May 22, 2013, when defendant hit plaintiff with the golf cart they had been using to navigate the course. The parties offer differing accounts of how the accident occurred. Plaintiff testified that he had been doing most of the driving that day. On the eighth hole of their round, defendant's shot landed on the green while plaintiff's golf ball was in the rough nearby. According to plaintiff, he parked the cart 10 to 15 feet behind his ball, with defendant remaining in the passenger seat. Plaintiff hit his shot and began walking directly to his ball when he was suddenly struck by the cart driven by defendant. Falling to the ground, the cart hit him a second time, rolling over his right leg. For his part, defendant testified that although he had not looked to see where plaintiff was when he began driving, he believed plaintiff was behind the cart and to the right. When he began accelerating, plaintiff stepped in front of the cart and was hit, although defendant did not recall running over plaintiff's leg.

Plaintiff filed the present case in April 2014, alleging that defendant was negligent in operating the golf cart. Prior to trial, plaintiff filed a motion in limine arguing that the court should hold defendant negligent as a matter of law. Defendant responded by arguing, among other things, that negligence was not the appropriate standard of care. Instead, under this Court's decision in *Ritchie-Gamester v City of Berkley*,[1] the proper standard was "reckless misconduct" because the parties were coparticipants in a recreational activity when the accident occurred. The trial court denied plaintiff's motion but did not resolve the applicable standard of care. The issue arose again, however, when the parties filed jury instructions. Plaintiff proposed an instruction on negligence—the ordinary standard of care—and defendant once more sought the *Ritchie-Gamester* reckless-misconduct standard. This time, the court concluded that reckless misconduct was the appropriate standard. At trial, the jury found that defendant's action did not constitute reckless misconduct.

The Court of Appeals reversed, holding that the ordinary-negligence standard should have been applied because "the risks posed by the golf cart were not risks inherent in the game of golf."[2] Noting that Michigan caselaw had not defined a precise approach to determining the "inherent" risks of a recreational activity, the Court looked to various dictionary definitions of the term "inherent," as well as foreign caselaw analyzing that term in the context of recreational sports.[3] The Court explicitly rejected the argument

---

[1] *Ritchie-Gamester v City of Berkley*, 461 Mich 73; 597 NW2d 517 (1999).

[2] *Bertin v Mann*, 318 Mich App 425, 438; 898 NW2d 243 (2016).

[3] *Id*. at 438-447.

that "inherent" risks were merely foreseeable risks.[4] Instead, "inherent" was taken to mean something necessary or intrinsic to the activity, without which it could not take place.[5] Given the relatively recent advent of the golf cart, the lack of any official rule referring to carts as inherent aspects of golf, and the "fact that there is no evidence in the instant case that the golf course where the accident occurred *required* the use of golf carts," the Court concluded that risks associated with carts were not inherent to golf.[6] Put differently, carts could be banned and golf would "remain virtually unchanged," and so they did not pose an inherent risk.[7] Accordingly, the Court, finding a question of fact regarding defendant's negligence, vacated the jury verdict and remanded.

Defendant sought leave to appeal in this Court, and we ordered briefing "addressing whether the reckless misconduct standard of care or the ordinary negligence standard of care applies to an injury resulting from the operation of a golf cart while playing golf recreationally. *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 87-89 [597 NW2d 517] (1999)."[8]

---

[4] *Id*. at 444 n 11.

[5] *Id*. at 444.

[6] *Id*.

[7] *Id*. at 446.

[8] *Bertin v Mann*, 501 Mich 869, 869-870 (2017).

## II. STANDARD OF REVIEW

We review de novo the interpretation of a common-law doctrine.[9]

## III. ANALYSIS

Our caselaw holds that "coparticipants in a recreational activity owe each other a duty not to act recklessly."[10] But this standard only applies to injuries that arise from risks inherent to the activity.[11] We have never explained how to determine whether a particular risk is inherent, and we now take the opportunity to do so.[12]

### A. *RITCHIE-GAMESTER*

We established our general approach to the reckless-misconduct standard in *Ritchie-Gamester*. There, the parties were participating in an "open skating" period at an ice arena when the defendant, skating backwards, ran into the plaintiff, knocking her down and causing serious injuries.[13] In deciding whether to retain the ordinary-negligence standard for claims made in these general circumstances, or to adopt a reckless-misconduct standard, we noted that the majority of jurisdictions had opted for the latter.[14] The reasons for the rule were many, including the participants' "consent" to

---

[9] *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010).

[10] *Ritchie-Gamester*, 461 Mich at 95.

[11] *Id*. at 87.

[12] No party disputes that golf is a recreational activity or that plaintiff and defendant were coparticipants in that activity.

[13] *Ritchie-Gamester*, 461 Mich at 75.

[14] *Id*. at 81-82 ("In the majority of other jurisdictions, however, the courts have adopted a 'reckless or intentional conduct' or a 'wilful and wanton or intentional misconduct'

---

the inherent risks, their participation with "notice" of the rules "sufficient to discharge the other participants' duty of care," their creation of an "implied contract," or their "assum[ption]" of the inherent risks.[15] Underlying all of these rationales was the observation that "[w]hen people engage in a recreational activity, they have voluntarily subjected themselves to certain risks inherent in that activity."[16] With regard to those risks, we held that coparticipants owed a duty only to refrain from reckless misconduct.[17]

Our opinion in *Ritchie-Gamester* did not expressly establish the proper analysis for assessing whether a particular risk is inherent in an activity. But as the Court of Appeals noted below, our Court did use language suggestive of two different ways to approach this inquiry.[18] The first, and more extensive, discussion focused on foreseeability. As an example of an inherent risk, *Ritchie-Gamester* cited a Texas case, which noted that " 'shanking the ball [in golf] is a foreseeable and not uncommon occurrence.' "[19] Later, we said "we suspect that reasonable participants recognize that

---

standard."); see also 1 Lindahl, Modern Tort Law: Liability and Litigation (2d ed, 2018 update), § 3:71 ("[A] majority of courts hold that participants in an athletic event owe a duty to other participants to refrain from reckless misconduct and that liability may be based on the breach of such duty.").

[15] *Ritchie-Gamester*, 461 Mich at 86-87.

[16] *Id*. at 87.

[17] *Id*. at 89.

[18] *Bertin*, 318 Mich App at 444 n 11 (citing *Ritchie-Gamester* and noting that it "implicitly recogniz[ed] a difference between something's being foreseeable and being natural").

[19] *Ritchie-Gamester*, 461 Mich at 88, quoting *Hathaway v Tascosa Country Club, Inc*, 846 SW2d 614, 616 (Tex App, 1993) (quotation marks omitted).

6

skill levels and play styles vary, and that an occasional injury is a foreseeable and natural part of being involved in recreational activities . . . ."[20]  In another place, we noted that "no liability will arise unless a participant's actions exceed the normal bounds of conduct associated with the activity."[21]

We also relied on the analysis set out by Justice Cardozo in *Murphy v Steeplechase Amusement Co,*[22] which indicated that foreseeability was the touchstone for assessing risk in these circumstances.  In *Steeplechase*, a customer at an amusement park was injured after falling in "the Flopper," which consisted of a moving belt that made it difficult to remain standing.  Justice Cardozo established the general rule that "[o]ne who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious as necessary, just as a fencer accepts the risk of a thrust by his antagonist . . . ."[23]  The plaintiff could see participants tumbling about when he decided to join them—"He took the chance of a like fate . . . ."[24]  It was important to the analysis that the risks were obvious, as Justice Cardozo noted the case might be different "if the dangers inherent in the sport were obscure or unobserved."[25]  By relying on this case in *Ritchie-Gamester*, we indicated our approval of its approach, stating: "Justice Cardozo's observations apply just

---

[20] *Ritchie-Gamester*, 461 Mich at 94.

[21] *Id.*

[22] *Murphy v Steeplechase Amusement Co, Inc*, 250 NY 479; 166 NE 173 (1929).

[23] *Id.* at 482.

[24] *Id.* at 483.

[25] *Id.*

7

as well to the conduct of coparticipants in a recreational activity as they do to the conduct of a person enjoying an amusement park ride. . . . In all these activities, there are foreseeable, built-in risks of harm."[26]

In contrast to its rather frequent references to the concept of foreseeability, *Ritchie-Gamester* barely discussed or distinguished a second possible way to approach the analysis, which would ask whether the risk arose from a necessary or essential aspect of the activity. Our only reference to this more demanding approach to risks was our use of the term "inherent" to describe the type of risks subject to the reckless-misconduct standard.[27] While we never defined "inherent" as absolutely essential to the activity, the Court of Appeals in this case did, turning to dictionaries to determine that "inherent risk" means a risk " 'necessarily entailed in a given activity . . . .' "[28] The Court of Appeals further defined "inherent" as involving the " 'constitution or essential character of something,' "[29] or something existing " 'as a permanent and inseparable element, quality,

---

[26] *Ritchie-Gamester*, 461 Mich at 87-88.

[27] See, e.g., *id*. at 86-87.

[28] *Bertin*, 318 Mich App at 438, quoting *Black's Law Dictionary* (10th ed). The Court noted that *Black's* also defined "inherent risk" as " '[a] fairly common risk that people normally bear whenever they decide to engage in a certain activity.' " *Bertin*, 318 Mich App at 438, quoting *Black's Law Dictionary* (10th ed). That definition, more in line with the foreseeability approach—as it looks to the commonality of the risk rather than the risk's necessity to the activity—was not discussed further by the Court of Appeals.

[29] *Id*. at 439, quoting *Merriam-Webster's Collegiate Dictionary* (11th ed).

or attribute[.]' "[30]  But *Ritchie-Gamester* never emphasized the word "inherent."[31]

## B.  FORESEEABILITY

While *Ritchie-Gamester* did not explicitly adopt a mode of analysis for determining which risks were "inherent" in a recreational activity, its frequent mentions of foreseeability point in the right direction.  For the reasons that follow, we now hold that the analysis must focus on whether the risk was reasonably foreseeable under the circumstances.

*Ritchie-Gamester* adopted the reckless-misconduct standard because it reflects the participants' expectations when they voluntarily subject themselves to the risks in an activity.[32]  As a leading treatise notes, "The limited duty or standard of care is derived directly from the plaintiff's limited expectations of safety."[33]  This reasoning naturally lends itself to a foreseeability test: because the rationale for the limited duty is that the participants have voluntarily elected to participate knowing that they might be injured, it

---

[30] *Id.*, quoting *Random House Webster's Unabridged Dictionary* (2d ed).

[31] Other courts have treated the word "inherent" as synonymous with "foreseeable."  Cf. *Demelio v Playmakers, Inc*, 19 Misc 3d 911, 913; 855 NYS2d 878 (2008) ("[T]here is no indication in any of the authorities that the [foreseeability] formulation differs in substance from the 'inherency' . . . standard[]. . . .  [T]he risks that 'inhere' in a sport or recreational activity are 'reasonably foreseeable consequences.' ").  This is consistent with one of the dictionary definitions of "inherent" that the Court of Appeals disregarded below.  See note 28 of this opinion and *Black's Law Dictionary* (10th ed), p 1524.

[32] *Ritchie-Gamester*, 461 Mich at 87; see also *Steeplechase*, 250 NY at 482-483 (explaining that the plaintiff could see the risk of injury with his own eyes before he participated).

[33] 1 Dobbs, Hayden & Bublick, Torts (2d ed), § 240, p 865.

makes sense to define the "inherent risks" in an activity by what is reasonably foreseeable—by what the participants did foresee or should have foreseen—rather than a court's metaphysical ponderings about the essence of the sport.[34] In other words, to the extent the lower standard of care is justified by a participant's consent to certain risks, it follows that the relevant risks are the ones that the participant knew or should have known about.[35] For these reasons, in cases like this, numerous courts ask whether a risk

---

[34] This rule is consistent with using the phrase "inherent risk," which as noted in note 28 of this opinion can mean "[a] fairly common risk . . . ." *Black's Law Dictionary* (10th ed). See also note 31 of this opinion.

[35] The Restatement explains the related doctrine of implied assumption of risk in this manner, grounding it on the fact that a plaintiff "fully understands a risk of harm to himself . . . and . . . nevertheless voluntarily chooses to enter or remain . . . ." 2 Restatement Torts, 2d, § 496 C, pp 569-570. The relevant question is "what the plaintiff knows, understands, and is willing to accept." *Id*. at § 496 C, comment *e*, p 571; see also Wharton, A Treatise on the Law of Negligence (2d ed), § 200, p 181 (noting the "general principle that a party cannot recover for injury he incurs in risks, themselves legitimate, to which he intelligently submits himself"). As one treatise states, implied assumption of risk (i.e., when there has been no express agreement to assume a risk) still requires the injured participant to have known and appreciated the risk, but such knowledge will be imputed to the participant if the risk was "clear and obvious" or, in other words, reasonably foreseeable. Prosser & Keeton, Torts (5th ed), § 68, pp 487-488; see also Dobbs, § 236 (noting that the standard was whether "a reasonable person in her [i.e., the plaintiff's] position would have appreciated" the risk).

While *Ritchie-Gamester*, 461 Mich at 87, did not state that its standard was based only on the assumption-of-risk doctrine, it noted the similar underpinnings—the voluntary consent of the participants—shared by that doctrine and the lower standard of care in the present context. Therefore, to the extent the rationales are similar, the doctrine is useful in understanding cases like the present, although the doctrine (fully immunizing a defendant rather than merely reducing the defendant's standard of care) has been abolished in this context. See *Ritchie-Gamester*, 461 Mich at 78 (noting that *Felgner v Anderson*, 375 Mich 23; 133 NW2d 136 (1965), "abolished assumption of risk in this context," after which the caselaw "began to move away from the 'ordinary care' standard").

was reasonably foreseeable or obvious,[36] including in cases involving golf cart accidents.[37]

---

[36] Some of the following cases involved the liability of nonparticipants, such as owners of golf courses, but all examined the same basic question as the one here, i.e., how to determine which risks are inherent. See, e.g., *Yoneda v Tom*, 110 Hawaii 367, 373; 133 P3d 796 (2006) (" '[T]he defense [of assumption of risk] applies to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation[,] except for acts which are reckless or intentional.' "), quoting *Foronda v Hawaii Int'l Boxing Club*, 96 Hawaii 51, 62; 25 P3d 826 (App, 2001) (first and third alterations in original); *Thompson v McNeill*, 53 Ohio St 3d 102, 104; 559 NE2d 705 (1990) ("Thus a player who injures another in the course of a sporting event by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence . . . ."), abrogated on other grounds by *Anderson v City of Massillon*, 134 Ohio St 3d 380 (2012); *Maddox v City of New York*, 66 NY2d 270, 278; 487 NE2d 553 (1985) ("There is no question that the doctrine [of assumption of risk] requires not only knowledge of the injury-causing defect but also appreciation of the resultant risk . . . . It is not necessary to the application of assumption of risk that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results."); *Simmons v Quarry Golf Club, LLC*, 2016-Ohio-525, ¶ 20; 60 NE3d 454 (Ohio App, 2016) (" 'The types of risks associated with [an] activity [for purposes of assumption of risk] are those that are foreseeable and customary risks of the . . . recreational activity.' ") (citation omitted; first and third alterations in original); *American Powerlifting Ass'n v Cotillo*, 401 Md 658, 670; 934 A2d 27 (2007) (" '[V]oluntary participants in sports activities may be held to have consented, by their participation, to those injury-causing events which are known, apparent, or reasonably foreseeable consequences of their participation.' "), quoting *Conway v Deer Park Union Free Sch Dist No 7*, 234 App Div 2d 332, 332; 651 NYS2d 96 (1996); *Hathaway*, 846 SW2d at 616 (applying the standard from *Thompson* asking whether the risk was foreseeable and customary); 27A Am Jur 2d, Entertainment and Sports Law, § 91, p 491 ("A voluntary participant in any lawful game, sport, or contest, in legal contemplation by the fact of his or her participation, assumes all risks incidental to the particular game, sport, or contest which are obvious and foreseeable[.]"); see also *Pfenning v Lineman*, 947 NE2d 392, 398, 404 (Ind, 2011) (addressing claims against a participant of a sport by examining the breach of duty—the existence of which includes asking whether harm is reasonably foreseeable—and holding that "if the conduct of [the] participant is within the range of ordinary behavior of participants in the sport, the conduct is reasonable as a matter of law and does not constitute a breach of duty").

[37] One case, decided shortly before the Court of Appeals' decision below, determined that

11

An approach based on foreseeability has the further benefit that it is common in the law, unlike speculation about the essence of a sport. We recently relied on the well-established definition of "foreseeability" in *Iliades v Dieffenbacher North America Inc* to explain that "[u]nder Michigan common law, foreseeability depends on whether a reasonable person 'could anticipate that a given event might occur under certain conditions.' "[38] In the context of other torts, the foreseeability of consequences is used as the standard for proximate causation.[39] Similarly, we have stated that "determining whether a duty exists" in a negligence claim depends on, among other things, "the foreseeability and nature of the risk."[40] Accordingly, our law frequently requires

---

an accident between golf carts driven by coparticipants was an inherent risk. *Wooten v Caesars Riverboat Casino, LLC*, 63 NE3d 1069, 1076 (Ind App, 2016). The rationale was that golf cart usage was "part and parcel of the modern golf game, with an unremitting presence on the fairway," and accidents between golf carts were "common and expected." *Id*. Consequently, such risk was " 'within the range of ordinary behavior of participants' in golf and therefore, as a matter of law, it cannot support a claim for negligence." *Id*., quoting *Pfenning*, 947 NE2d at 404. See also *Valverde v Great Expectations, LLC*, 131 App Div 3d 425, 426; 15 NYS3d 329 (2015) (holding that " '[g]olfers . . . must be held to a common appreciation of the fact that there is a risk of injury from improperly used carts on a fairway which is inherent in and aris[es] out of the nature of the sport' "), quoting *Brust v Town of Caroga*, 287 App Div 2d 923, 925; 731 NYS2d 542 (2001). We do not comment on whether these cases were correctly decided; rather, we highlight them to demonstrate that the foreseeability framework has been applied in similar cases.

[38] *Iliades v Dieffenbacher North America Inc*, ___ Mich___; ___ NW2d___ (2018) (Docket No. 154358); slip op at 10, quoting *Samson v Saginaw Prof Bldg, Inc*, 393 Mich 393, 406; 224 NW2d 843 (1975).

[39] See, e.g., *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994) ("On the other hand, legal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.").

[40] *Schultz v Consumers Power Co*, 443 Mich 445, 450; 506 NW2d 175 (1993); see also

assessing the foreseeability of risks and events, and courts are familiar with the analysis.[41]

The approach adopted by the Court of Appeals below, asking whether a risk arose from a necessary or essential aspect of the game, is flawed for multiple reasons. Most importantly, it is not an approach suited to judicial decision-making, or even legal reasoning. Instead, it represents a sort of philosophical essentialism that posits the existence of abstract essences that courts must discern.[42] There is, under this thinking, an

---

*Moning v Alfono*, 400 Mich 425, 439; 254 NW2d 759 (1977) (noting that the concepts of duty and proximate cause are related, as each "depend[s] in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable").

[41] It is also consistent with statutes on this topic. The Legislature has consistently defined "inherent risk" as including dangers involving technology or equipment not essential to an activity—for example, collisions with ski-tower components and snow-grooming equipment are inherent risks of skiing. MCL 408.342(2) ("Each person who participates in the sport of skiing accepts the dangers that inhere in the sport insofar as the dangers are obvious and necessary," including "collisions with ski lift towers and their components, with other skiers, or with" various property and equipment such as snow-making or snow-grooming equipment.). See also MCL 445.1725 (providing that a participant "in roller skating accepts the danger that inheres in that activity insofar as the dangers are obvious and necessary," including collisions with objects "properly" placed within the path of the roller skater); MCL 324.82126(8) (providing that individuals participating in snowmobiling accept "risks associated with that sport insofar as the dangers are obvious and inherent," including the risk of injuries arising from both natural and artificial objects); MCL 691.1736 (providing that participants in trampolining "accept[] the danger that inheres in that activity insofar as the dangers are obvious and necessary," including injuries involving "objects or artificial structures properly within the intended travel of the trampoliner"). What these statutes demonstrate is that "inherent risk" is linked not to a narrowly defined essence of an activity, but rather to the participants' reasonable expectations.

[42] See Freeman, *Lloyd's Introduction to Jurisprudence* (London: Sweet & Maxwell, 8th ed, 2008), p 34 ("Essentialism . . . has a history stretching back to Plato's notion of ideal universals, namely, the notion that every class or group of things has an essential or

---

13

ideal form of golf, or any other recreational activity. What the Court of Appeals did here was examine this ideal of golf, asking whether it included golf carts.[43]

This manner of reasoning is better left to philosophers than judges. In his dissent in *PGA Tour, Inc v Martin*, Justice Scalia explained why.[44] In that case, the plaintiff challenged the PGA Tour's ban on golf carts in tournament play, requesting an accommodation under the Americans with Disabilities Act (ADA) on the ground that allowing him to ride in a cart would not "fundamentally alter the nature" of the golf tournaments.[45] The majority agreed, holding that golf cart usage would not fundamentally alter the nature of the game.[46] In dissent, Justice Scalia explained that sports are social constructs—they lack an essential character that is immutable.[47] The sport's players and rulemakers can change how the game is played for any reason or no reason at all, and the "nature" of the game will change accordingly. If, as the majority assumed, the PGA Tour was obligated "to play classic, Platonic golf," then the Court was faced with "an awesome responsibility":

> It has been rendered the solemn duty of the Supreme Court of the United
> States, laid upon it by Congress in pursuance of the Federal Government's

---

fundamental nature, common to every member of the class, and that the process of defining consists in isolating and identifying this common nature or intrinsic property.").

[43] *Bertin*, 318 Mich App at 446.

[44] *PGA Tour, Inc v Martin*, 532 US 661; 121 S Ct 1879; 149 L Ed 2d 904 (2001).

[45] 42 USC 12182(b)(2)(A)(ii); see *Martin*, 532 US at 664-665.

[46] *Martin*, 532 US at 690-691.

[47] *Id*. at 699-700 (Scalia, J., dissenting).

power "[t]o regulate Commerce with foreign Nations, and among the several States," to decide What Is Golf. I am sure that the Framers of the Constitution, aware of the 1457 edict of King James II of Scotland prohibiting golf because it interfered with the practice of archery, fully expected that sooner or later the paths of golf and government, the law and the links, would once again cross, and that the judges of this august Court would some day have to wrestle with that age-old jurisprudential question, for which their years of study in the law have so well prepared them: Is someone riding around a golf course from shot to shot *really* a golfer? The answer, we learn, is yes. The Court ultimately concludes, and it will henceforth be the Law of the Land, that walking is not a "fundamental" aspect of golf.

Either out of humility or out of self-respect (one or the other) the Court should decline to answer this incredibly difficult and incredibly silly question. To say that something is "essential" is ordinarily to say that it is necessary to the achievement of a certain object. But since it is the very nature of a game to have no object except amusement (that is what distinguishes games from productive activity), it is quite impossible to say that any of a game's arbitrary rules is "essential." Eighteen-hole golf courses, 10-foot-high basketball hoops, 90-foot baselines, 100-yard football fields—all are arbitrary and none is essential. The only support for any of them is tradition and (in more modern times) insistence by what has come to be regarded as the ruling body of the sport . . . .[48]

Our case is different, but the lesson is the same. In both *Martin* and the present matter, the judiciary has been asked to define the essence of a sport. Judges have no special insight regarding the nature of golf and, in general, should not be in the business of policing the boundaries of sports. Rather than requiring courts to engage in such a nebulous endeavor, we hold that the proper analysis should focus on reasonable foreseeability.

---

[48] *Id*. at 700-701 (citation omitted).

## C. ASSESSING FORESEEABILITY

In this context, the assessment of whether a risk is inherent to an activity depends on whether a reasonable person under the circumstances would have foreseen the particular risk that led to injury. If so, then the risk is inherent and the reckless-misconduct standard of care applies. The foreseeability of the risk is a question of fact, and it is useful to describe a few of the considerations that should inform the determination.[49]

As an initial matter, it is the risk of harm that must be reasonably foreseeable.[50] The Court of Appeals below focused broadly on the use of carts in golf rather than the risk of being hit by one. While the questions are not unrelated—the prevalence of carts might indicate a more obvious and increased risk of accident—the proper analysis centers

---

[49] Foreseeability, in similar contexts, has been treated as a factual issue. See *Lego v Liss*, 498 Mich 559, 562-563; 874 NW2d 684 (2016) (noting that there was "no question of material fact" regarding the foreseeability of a police officer's getting shot by a fellow officer while engaging a shooter, and thus holding that the plaintiff's injury arose from an inherent risk under MCL 600.2966 and the defendant was immune from liability). And factual disputes regarding the applicable standard of care have likewise been treated as factual issues. Cf. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 595; 614 NW2d 88 (2000) ("As a general rule, if there is evidence from which invitee status [which determines the level of duty a defendant owes] might be inferred, it is a question for the jury."), citing *Nezworski v Mazanec*, 301 Mich 43, 58; 2 NW2d 912 (1942) (noting that whether the plaintiff was an invitee or trespasser for purposes of determining the defendant's duty was a question of fact). Of course, if no genuine issue of material fact remains, then a court can decide the issue under MCR 2.116(C)(10).

[50] See *Maddox*, 66 NY2d at 278 ("It is not necessary to the application of assumption of risk that the injured plaintiff have foreseen the exact manner in which his or her injury occurred, so long as he or she is aware of the potential for injury of the mechanism from which the injury results.").

on whether a reasonable person in the position of the injured participant could have foreseen that risk. The test is objective and focuses on what risks a reasonable participant, under the circumstances, would have foreseen.[51] The risk must be defined by the factual circumstances of the case—it is not enough that the participant could foresee being injured in general; the participant must have been able to foresee that the injury could arise through the "mechanism" it resulted from.[52] Relatedly, those factual circumstances include the general characteristics of the participants, such as their relationship to each other and to the activity[53] and their experience with the sport.[54]

---

[51] *Yoneda*, 110 Hawaii at 373 ("The inquiry into what constitutes an inherent risk 'is *an objective one*, and must be, for the vagaries of prior knowledge or perception of risk would undermine the doctrine's underlying policy[] that the law should not place unreasonable burdens on the free and vigorous participation in sports[.]' "), quoting *Foronda*, 96 Hawaii at 67 (alterations in original); see generally *Iliades*, ___ Mich ___; slip op at 10 (focusing on a reasonable person); cf. 2 Restatement Torts, 2d, § 289, p 41 (providing, in the context of establishing a standard of reasonable conduct, that an actor is required to foresee risks "if a reasonable man would [recognize the risk] . . . while exercising . . . such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence, and judgment as a reasonable man would have").

[52] *Maddox*, 66 NY2d at 278; see also *Cooperman v David*, 214 F3d 1162, 1167 (CA 10, 2000) (noting, under a Wyoming statute providing a defense for "inherent risks," that the risk could not be considered "in a vacuum, apart from the factual setting," and instead must be defined with the "specificity permitted by the factual record").

[53] *Yoneda*, 110 Hawaii at 373 (" 'In determining whether the defendant's conduct is an inherent risk of the sports activity, *we consider the nature of the activity, the relationship of the defendant to the activity and the relationship of the defendant to the plaintiff.*' "), quoting *Foronda*, 96 Hawaii at 66.

[54] *Maddox*, 66 NY2d at 278 ("[A]wareness of risk is not to be determined in a vacuum. It is, rather, to be assessed against the background of the skill and experience of the particular plaintiff . . . .").

The general rules of the activity can also be considered, as the Court of Appeals did here; but those rules are not dispositive, and it is also relevant whether the participants engaged in any regular departures from the rules or other practices not accounted for by the rules.[55]  Also relevant are any regulations prescribed by the venue at which the activity is taking place.  In this case, for example, the Court of Appeals correctly considered whether the use of golf carts was required,[56] and it is also relevant whether golf carts were banned or confined to certain areas of the course.[57]  In sum, the usual approach to reasonable foreseeability applies in the present context.

## IV.  CONCLUSION

For the reasons above, we hold that "inherent risks" under *Ritchie-Gamester* are those that are reasonably foreseeable under the circumstances of the case.  When an

---

[55] See, e.g., *Lux v Cox*, 32 F Supp 2d 92, 102 (WDNY, 1998) ("In conducting this analysis, the court may consider such factors as the accepted and applicable rules or standards of the sport, published guidelines, evidence of common usage, conditions that exist at similar facilities, proof of prior accidents at the same place under substantially similar circumstances, or the absence of prior accidents, or other relevant factors.").  The formal or informal rules may be consulted, but they are not the dispositive criterion in determining what is foreseeable.  As *Ritchie-Gamester* pointed out, using the rules in this manner would fail to reflect the reasonable expectations of participants, who surely anticipate injuries regardless of how the rules "are structured and enforced."  *Ritchie-Gamester*, 461 Mich at 94.  As one scholar has noted, "[E]ven violation of a rule of the game does not in itself result in liability; if the violation is one that is ordinary to the way the game is played, the defendant will be liable only if he is reckless or intends harm."  Dobbs, § 240, p 866.

[56] *Bertin*, 318 Mich App at 444.

[57] See, e.g., *Forman v Kreps*, 2016-Ohio-1604, ¶¶ 27-31; 50 NE3d 1 (Ohio App, 2016) (noting, with regard to the assumption of risk, arguments regarding a golf course's customs and requirements regarding golf carts).

injury arises from such a risk, the reckless-misconduct standard applies. Accordingly, we remand this case to the Oakland Circuit Court for that court to determine whether there is a genuine issue of material fact as to whether a participant in the activity in question would, under the circumstances, have reasonably foreseen the risk of this particular injury. If the court finds that there is no genuine issue of material fact that the risk was reasonably foreseeable and the recklessness standard applies, defendant is entitled to the benefit of the jury verdict finding that he was not reckless, and the case shall be dismissed. Conversely, if the trial court finds that there is no genuine issue of material fact that the risk was not reasonably foreseeable and the negligence standard applies, plaintiff is entitled to a new trial. Finally, if the trial court finds a genuine issue of material fact regarding the foreseeability of the risk, the court shall undertake further proceedings not inconsistent with this Court's opinion.[58]

David F. Viviano
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement

---

[58] Plaintiff has alternatively argued that *Ritchie-Gamester* is inapplicable because the golf cart here was subject to the Michigan Vehicle Code (MVC), MCL 257.1 *et seq.*, and thus the standard of care is ordinary negligence. See *Van Guilder v Collier*, 248 Mich App 633; 650 NW2d 340 (2001). The Court of Appeals determined that the MVC did not apply to the golf cart or parties at issue. *Bertin*, 318 Mich App at 437-438. We see no clear error in the Court of Appeals' analysis, and therefore we decline to reach this issue.