# Order

Michigan Supreme Court
Lansing, Michigan

May 21, 2021

161232

JEFF TRECHA, as Next Friend of
BRADLEY TRECHA,
       Plaintiff-Appellant,

v

BRENDEN REMILLARD,
       Defendant-Appellee.

_____/

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

SC: 161232
COA: 347695
Genesee CC: 17-109425-NI

On April 7, 2021, the Court heard oral argument on the application for leave to appeal the March 5, 2020 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

CAVANAGH, J. (*dissenting*).

I respectfully dissent from the Court's order denying leave to appeal. Plaintiff was injured when a coparticipant in a high school tennis practice, in an outburst of anger, blindly launched a ball with his racket. The ball struck plaintiff in the eye, causing severe damage. The circuit court granted summary disposition to defendant under MCR 2.116(C)(10), and the Court of Appeals affirmed. But the lower courts erred by relying on a factual conclusion unsupported by the record and by concluding that defendant's blowup was reasonably foreseeable.

Plaintiff Bradley Trecha and defendant Brenden Remillard were teammates on the Fenton High School tennis team in September 2016. Near the end of a practice, plaintiff was picking up balls while defendant was finishing a match. Defendant hit a ball into the net; then, out of frustration, he took a ball from his pocket and hit it behind him toward the fence. He did not look before hitting the ball and struck it directly at plaintiff, who was 10 to 15 feet away. Defendant described the incident as follows:

> I would say the match was being played, the point was being played out. I hit the ball into the net to end the point, losing the point, and then had another ball in my pocket. Had the ball out in a quick motion, turned around and hit it toward the fence, I guess. And then he was there hunched over, kind of squatting down as he was picking up balls maybe, and then

when the ball was struck he had turned at the same time, I assume, and that's when he was hit.

Plaintiff was struck in the eye and, as mentioned above, suffered severe injury. Plaintiff sued, arguing that defendant was either negligent or grossly negligent. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that the applicable standard of care was recklessness because the parties were coparticipants in a recreational activity and defendant's conduct was not reckless.

The circuit court granted defendant's motion, holding that the injury was reasonably foreseeable under *Bertin v Mann*, 502 Mich 603 (2018). The court began its analysis quoting *Chryczyk v Juhas*, unpublished per curiam opinion of the Court of Appeals, issued January 27, 2011 (Docket No. 294348), p 4, for the proposition that "[g]etting hit by an errant ball was a risk inherent to tennis practice[.]" The court discussed "regular departures from the rules or other practices" and said the team's coach "regularly reminded the team members not to hit balls into the fence." From that assertion, the court reasoned, "[t]he Court has to question if team members didn't routinely hit balls, striking balls into the fence without being closely monitored, why would there be a need for the coach to be regularly reminding them to refrain from doing that? This all goes to the foreseeability of this occurring." The court then concluded that defendant's conduct was not reckless and that summary disposition was appropriate.

The Court of Appeals affirmed, observing:

The very nature of tennis is that tennis balls, for better or worse, will leave the actual bounds of the court, such that a person standing near, but not on, the court risks being hit from a ball. This risk comes not only from tennis balls being hit to score points, but also tennis balls hit as practice or, in this case, out of frustration—especially when the sport is being undertaken competitively by high-school students. [*Trecha v Remillard*, unpublished per curiam opinion of the Court of Appeals, issued March 5, 2020 (Docket No. 347695), p 3.]

The Court of Appeals also relied on the conclusion that tantrums of this sort were a regular occurrence at the team's practices: "The team's coach testified that he had to repeatedly remind players not to hit balls into the fence, indicating, as the trial court found, that the practice was fairly common." *Id*. The Court of Appeals concluded that, as a general matter, "being hit with a tennis ball while in the bounded tennis area near the fence" was foreseeable. *Id*.

In *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 87, 89 (1999), we adopted the "reckless misconduct" standard of care for coparticipants in recreational activities with regard to "certain risks inherent in that activity." We reasoned that participants in recreational activities do not expect to be sued for mere carelessness, that the recklessness standard "lends itself to common-sense application," and that the recklessness standard

"encourages vigorous participation in recreational activities, while still providing protection from egregious conduct." *Id*. at 89.

In *Bertin*, we explained that *Ritchie-Gamester*'s holding was not limited to risks necessarily entailed in a given activity, but rather extended to situations in which "a reasonable person under the circumstances would have foreseen the particular risk that led to injury." *Bertin*, 502 Mich at 619. Of particular importance, *Bertin* discussed how to define the applicable risk, stating that "[t]he risk must be defined by the factual circumstances of the case—it is not enough that the participant could foresee being injured in general; the participant must have been able to foresee that the injury could arise through the 'mechanism' it resulted from." *Id*. at 620-621. We offered a nonexhaustive list of factors to consider in that inquiry: "the general characteristics of the participants, such as their relationship to each other and to the activity and their experience with the sport," "[t]he general rules of the activity," "whether the participants engaged in any regular departures from the rules or other practices not accounted for by the rules," and "any regulations prescribed by the venue at which the activity is taking place." *Id*. at 621-622. "The foreseeability of the risk is a question of fact" that is generally resolved by the jury, not the court. *Id*. at 619; see also *id*. at n 49. When reviewing a motion under MCR 2.116(C)(10), "the trial court considers the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of any material fact exists to warrant a trial." *Ritchie-Gamester*, 461 Mich at 76.

As an initial matter, the lower courts erred by finding that the members of the Fenton High School boys' tennis team regularly exhibited this type of behavior. The circuit court stated that the coach testified he "regularly reminded the team members not to hit balls into the fence," and the Court of Appeals repeated the assertion. This assertion is completely without support in the record. At one point the coach was asked, "Is it important that once a practice has ended that balls not be hit in the direction of others whether looking or not?" He answered, "Oh, yeah." The only other comment the coach made in regard to this sort of behavior was the general statement "it's kind of—I guess, I mean you'd call it, some of it, common sense. I don't allow—I don't allow horseplay. You know, I don't let some kind of bedlam, you know, go on during practice, you know." Defense counsel was asked at oral argument to identify where the record supported this assertion, and counsel candidly confirmed that the record did not. We review a trial court's factual findings for clear error. *Novi v Robert Adell Children's Funded Trust*, 473 Mich 242, 249 (2005). "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Mason*, 486 Mich 142, 152 (2010) (quotation marks, brackets, and citation omitted). It's obvious a mistake has been made here, as there is *no evidence* of the factual finding both lower courts relied on.

Even viewing the circuit court's reasoning in the most favorable light possible, it did not mention any evidence of players behaving as defendant did here. The circuit

court opined that because there was a rule against this dangerous behavior, the behavior must be commonplace. That conclusion simply does not follow from the premise. A past dangerous behavior might require a prohibition, and an effective prohibition might end the behavior. Or a behavior that is dangerous enough might prompt a preemptive prohibition. I cannot agree that evidence that a behavior is prohibited implies that the behavior is ongoing. But again, in this case, there is not even evidence of such a prohibition.

Without that erroneous factual finding, the lower courts have little analysis remaining to support their position. There is the notion that "an errant ball [is] a risk inherent to tennis practice." *Chryczyk*, unpub op at 4. It is true that balls leave the field of play in tennis with some regularity. Indeed, getting the ball to leave the court in a particular manner is the object of the game. But it matters how the ball leaves the field of play. A helpful analogy is to consider baseball, where balls leave the field with some regularity. Anyone attending a baseball game should be aware that home runs and foul balls leave the field of play. Spectators, players, and others at a game might find themselves watching more carefully as a pitch is delivered, and preparing for the risk of the ball leaving the bat. But suppose a first baseman, angry that a baserunner has been ruled safe, hurls the ball blindly and strikes a spectator or groundsperson from a distance of 10 to 15 feet. This is a very different risk, and not one that is reasonably foreseeable.

With that in mind, in keeping with *Bertin*, I would not define the relevant risk here as simply an "errant ball." Viewing the relevant risk as simply an "errant ball" does not capture the relevant "mechanism" *Bertin* discussed. *Bertin*, 502 Mich at 621. Rather, paying attention to "the factual circumstances of the case," *id*., the relevant "mechanism" is the risk of a coparticipant lashing out and launching balls randomly. Like the hypothetical spectator at a baseball game, plaintiff would have had the familiar cues of the rhythm of a tennis game to prepare for the risk of errant balls from a game of tennis. But there would have been no way to predict defendant's regrettable display here.

Considering *Bertin*'s factors in this context, there does not seem to be much relevance to the characteristics of the participants. With regard to the "general rules of the activity," *id*., postmatch behavior of this kind is clearly something that would not be viewed favorably at any level of tennis. If the applicable rules include sportsmanship principles enforced through the parties' team or throughout high school sports generally in Michigan, then this conduct is clearly further out of bounds. *Bertin*'s third factor is "regular departures from the rules or other practices not accounted for by the rules," *id*., and as discussed earlier, there is no record evidence that this behavior was a regular departure of which plaintiff should have been on notice. Lastly, with regard to "regulations prescribed by the venue at which the activity is taking place," *id*. at 621-622, while there was no evidence of a particular rule about hitting balls at the fence or evidence that players broke such a rule, the coach did testify, "I don't allow—I don't allow horseplay. You know, I don't let some kind of bedlam, you know, go on during

practice, you know." The coach made the team run after practice as punishment for the incident. Thus, viewing the evidence in the light most favorable to plaintiff, defendant's conduct was prohibited during Fenton High School tennis practices. In sum, the *Bertin* factors break in favor of plaintiff.

*Ritchie-Gamester* emphasized that this standard should be applied in a "common-sense" manner. But I do not believe that people in Michigan foresee being subjected to the risk of a player angrily and blindly striking a ball while playing tennis in their local park. I do not think that keeping this case from a jury either "encourages vigorous participation in recreational activities" or provides "protection from egregious conduct." *Ritchie-Gamester*, 461 Mich at 89. Consequently, I would reverse and remand to the circuit court.

BERNSTEIN and WELCH, JJ., join the statement of CAVANAGH, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 21, 2021



t0518

Clerk